CHESAPEAKE & OHIO RAILWAY COMPANY v. WILLIAMS.

[No. 17,114.   Filed November 19, 1943.]

*Warner, Clark & Warner,* of Muncie, and *Albert H. Cole,* of Peru, for appellant.

*Davis & Davis,* of Muncie, for appellee.

CRUMPACKER, P. J.—The appellee recovered judgment below in the sum of one thousand dollars ($1,000) for personal injuries alleged to have been received when an automobile he was driving was struck by one of the appellant's locomotives at a railway and road intersection, a short distance north of the city of Muncie on February 20, 1941.

The complaint upon which the case was tried is in two paragraphs, the first of which counts upon alleged negligence on the part of the appellant in failing to sound the signals required by statute of those operating railroad trains approaching public highway intersections. The second paragraph of said complaint seeks recovery on the theory that the appellant had the last clear chance to avoid the accident, which it negligently failed to take. The issues were joined by a special denial under Rule 1-3, 1940 Revision, and an affirmative paragraph of answer charging the appellee with failure

to stop before entering upon the appellant's railroad tracks as required by § 47-2114, Burns' 1940 Replacement, § 11189-111 Baldwin's Supp. 1939. Trial was to a jury with verdict for the appellee and judgment as above indicated.

The sole error relied upon for reversal is predicated upon the court's action in overruling the appellant's motion for a new trial, which raises two major questions for consideration: first, Does the evidence disclose contributory negligence as a matter of law, and thereby defeat the cause of action stated in the first paragraph of the complaint, and second, Is the doctrine of last clear chance available to the appellee as a basis of recovery on the second paragraph thereof? We approach the first of these propositions with a full realization that ordinarily contributory negligence is a question of fact for the jury, and it is only when the controlling facts are not in dispute and are susceptible of but one conclusion on the part of reasonable men that the question becomes one of law for the court. *Baltimore & Ohio R. Co.* v. *Reyher, Admx.* (1940), 216 Ind. 545, 24 N. E. (2d) 284; *City of Michigan City* v. *Rudolph* (1938), 104 Ind. App. 643, 12 N. E. (2d) 970; *New York Central R. R. Co.* v. *Casey* (1938), 214 Ind. 464, 14 N. E. (2d) 714; *City of Gary* v. *Bontrager Const. Co.* (1943), 113 Ind. App. 151, 47 N.E. (2d) 182. A careful examination of the evidence shows the following facts to be undisputed: At eight o'clock on the morning of February 20, 1941, a bright and clear, but somewhat windy day, the appellee, accompanied by his mother, left home in an automobile to visit an uncle who lived some distance away. He drove his automobile in a northwesterly direction, a distance of 200 or 250 feet, along a driveway which parallels the right-of-way of the Pennsylvania Rail-

road Company, and while so doing, his back was toward the appellant's train which was approaching the crossing where the accident occurred, from the southeast. When he reached an east and west driveway, which, for convenience sake, we will refer to as the Cheesman Road, he turned sharply to the east and continued along said driveway across the right-of-way of the Pennsylvania Railroad Company, and on to that of the appellant, which adjoins and runs parallel thereto. He crossed a side track which lies on the appellant's right-of-way between its main line and that of the Pennsylvania railroad, and continued thence directly on to the crossing where the accident occurred. From the time he turned into the Cheesman Road until he was struck, he proceeded at a speed of some eight to ten miles per hour and could have stopped at any time while so driving in a distance of two or three feet. When he turned east, as above described, the appellant's locomotive had just passed over Walnut Street on the northern limits of the City of Muncie, some 500 to 550 feet to the southeast, at a speed of about twenty miles per hour, and, by reason of the obtuse angle at which the railroad crosses the roadway, it approached the appellee's automobile almost head on. From the west side of the Pennsylvania right-of-way to the appellant's main track is a distance of 145 to 150 feet, and at the point where he turned east, the appellee could see along the appellant's tracks to the southeast as far as Walnut Street, and from the center of the Pennsylvania right-of-way, he had an unobstructed view in that direction for approximately 3200 feet. At all times while the appellee was driving his automobile along the 145 to 150 feet of roadway between the west line of the Pennsylvania right-of-way to the crossing in controversy, the approaching train was plainly visible.

Although he was traveling toward a railroad crossing, the close proximity of which he was aware, and at a speed that would have enabled him to have stopped within two or three feet, he neither stopped nor looked for an approaching train until a matter of seconds before he was hit. His own version of the matter appears in the following testimony:

"Q. I believe you say in your complaint you could have stopped within two or three feet?

A. I could if I had seen the train.

Q. If you had seen the train?

A. Yes.

Q. At that time you were going directly towards the track after you made that turn to the right, weren't you?

A. Yes.

Q. The tracks come through there at an angle, don't they?

A. Yes.

Q. From the southeast to the northwest?

A. Yes.

Q. So that you were running your automobile very near directly toward the train, weren't you?

A. Almost.

Q. And if you had thought to look you would have seen the train, wouldn't you?

A. If I had heard it I would, too. If I had heard the train I would have looked, too.

Q. But even if you hadn't heard it if you had looked you would have seen it?

A. You would, too, wouldn't you?

Q. Sure I would, but you didn't think to look until you got right on the track?

A. Sometimes you do, too, don't you?

Q. I might. When you first did look to see whether a train was coming you were on the track and the train was right on you?

A. Yes, sir."

Nowhere else in the record is there any different account of his conduct.

The courts of this State are thoroughly committed to the doctrine that a railroad crossing is a known place of danger, and its presence alone is a warning of the possible approach of trains. When about to cross a railroad a traveler on the highway must use reasonable care for his own safety, and it is requisite to such care "that he look both ways and listen attentively, and if by looking he could have seen, and if by listening he could have heard an approaching train in time to avoid collision, it is presumed, if such collision occurs, that he either did not look and listen or did not heed what he saw and heard, in either of which events he is guilty of contributory negligence." *Baltimore, etc., R. Co.* v. *Rosborough* (1907), 40 Ind. App. 14, 18, 80 N. E. 869; *Cleveland, etc., R. Co.* v. *Griffin* (1901), 26 Ind. App. 368, 58 N. E. 503; *Pittsburgh, etc., R. W. Co.* v. *Fraze* (1898), 150 Ind. 576, 50 N. E. 576; *Morford* v. *Chicago, etc., R. Co.* (1902), 158 Ind. 494, 61 N. E. 857; *N. Y. C. & St. L. R. R. Co.* v. *Miller, Admr.* (1936), 101 Ind. App. 498, 200 N. E. 78; *Grand Trunk Western R. R. Co.* v. *Briggs* (1942), 112 Ind. App. 360, 42 N. E. (2d) 367.

As was said in *Cleveland, etc., R. Co.* v. *Van Laningham* (1913), 52 Ind. App. 156, 164, 97 N. E. 573, 576.

"When a person before attempting to cross a railroad track does not heed the danger of his situation, and fails to look and listen for an approaching train, he is guilty of negligence as a matter of law, . . ."

In the instant case, we have the appellee's own testimony that he did not look for an approaching train until a few seconds before he was struck, and there is no evidence, from any source or of any character, to the contrary. It is undisputed that the train that struck him was in plain view, and that he could have seen it at any point for a distance of 145 feet west of the crossing had he looked, and that at any time while traveling such distance he could have stopped his automobile within two or three feet and so avoided the accident. It seems clear to us that reasonable men can come to no other conclusion than that the appellee's own negligence contributed to his injuries, and thus his right to a recovery on the first paragraph of his complaint is defeated.

But, notwithstanding his own negligence, the appellee contends that, on the facts in evidence, the appellant had the last clear chance to avoid the accident, and as that is the theory of the second paragraph of his complaint, the verdict of the jury must be sustained. This contention is based on the following undisputed evidence: As the appellant's train approached the crossing in controversy, the head brakeman was seated on the left or west side of the engine cab. When the locomotive was thirteen or fourteen car lengths back from, or southeast of, the crossing, said brakeman saw the appellee traveling northwest along the road parallel with the Pennsylvania right-of-way, with his back to the approaching train. He continued to watch the appellee as he turned east on the Cheesman Road and observed him continuously until he was struck at the crossing, but did nothing to warn him of the approaching train until such warning was too late to be effective. At no time while the appellee was under such observation did he alter the speed of his automobile which was

estimated by all the witnesses who saw it at eight to ten miles per hour. Just before the appellee reached the siding to the west of the appellant's main track, the head brakeman saw a lady in the automobile who seemed to be looking directly toward the locomotive. As the automobile came on to the siding or passing track, the head brakeman called to the engineer who immediately sanded the rails and applied the emergency brakes, and a few seconds thereafter the collision occurred.

Broadly stated, the doctrine of last clear chance is to the effect that negligence of the plaintiff does not preclude a recovery for the negligence of the defendant where it appears that the defendant, by exercising reasonable care, might have avoided injuring the plaintiff, notwithstanding negligence on the part of the plaintiff which contributed thereto. *Indianapolis Traction, etc., Co.* v. *Kidd* (1906), 167 Ind. 402, 79 N. E. 347, 7 L. R. A. (N. S.) 143; *The Indianapolis and Cincinnati Railroad Company* v. *McClure* (1866), 26 Ind. 370, 89 Am. Dec. 467. "The practical import of the doctrine is that a negligent defendant is held liable to a. negligent plaintiff, . . . if the defendant, aware of the plaintiff's peril, or, . . . although unaware of the plaintiff's peril, reasonably in the exercise of due care should have been aware of it, had in fact a later opportunity than the plaintiff to avoid an accident." 38 Am. Jur. 900, Section 215. Fundamentally it is what the defendant did or failed to do after the plaintiff was imperiled, and which, in the exercise of ordinary care, he should have done or refrained from doing, that constitutes the breach of duty for which the defendant is held liable under the rule of last clear chance. *L. S. Ayres & Co.* v. *Hicks* (1942), 219 Ind. 348, 40 N. E. (2d) 334; *Baker* v. *Pritchard* (1935), 100

Ind. App. 509, 194 N. E. 78. It seems that the earlier decisions of both this court and the Supreme Court have denied the application of the doctrine of last clear chance where the negligence of the plaintiff and defendant operated concurrently and simultaneously, and neither terminated before the instant of the injury. *Wabash R. Co.* v. *Tippecanoe, etc., Trust Co.* (1912), 178 Ind. 113, 98 N. E. 64, and cases cited. In recent years, however, this rule has been modified, and the doctrine of last clear chance now prevailing in this State is stated in *Terre Haute, etc., Traction Co.* v. *Stevenson* (1920), 189 Ind. 100, 105, 106, 123 N. E. 785, 786, as follows:

> "The traveler's peril known to the motorman creates a special duty to take advantage of his chance, if he have a chance. This duty to avoid a collision continues so long as the peril continues. When a traveler is in a perilous situation resulting from his own negligence, and the peril is known to the motorman, in time to clearly afford an opportunity to avoid injuring the one in peril, his duty to use the chance arises and continues while the peril lasts, whether the negligence of the traveler continues or is concurrent, or whether the traveler becomes duly, though ineffectively diligent. Neither concurrence nor continuance of the traveler's negligence alone is a defense when the motorman has a last clear chance to avoid the injury by due diligence after the discovery of the peril. Such continuance of the negligence of the traveler would be a defense if the motorman did not know of the peril thereby created, though the motorman was at the time negligent in not knowing. No special duty to use due care in favor of a particular party arises without actual notice of the particular party's peril."

This is in harmony with an earlier decision of this court wherein it is said that the rule that there can be no recovery under the doctrine of last clear chance

where the negligence of the parties is continuing and concurrent does not apply "to that class of cases in which it appears that the motorman actually saw the person injured and realized or should have realized the peril to which he was exposed or was about to expose himself, in time to have prevented the injury. In such a case, the special duty toward the particular person arises as soon as the motorman sees him under such conditions as would indicate to a person of ordinary prudence that he was in danger of being injured by the car, or was about to expose himself to such injury. It then becomes the special duty of the motorman to use every reasonable means to avoid injuring him; and if he does not do so, the injured person may recover, notwithstanding his want of care in failing to discover the approach of the car continued up to the very instant of the injury, and notwithstanding also that the plaintiff possessed the physical ability to have avoided the injury, in case he had discovered his peril at any time before the accident happened." *Indianapolis Traction, etc., Co.* v. *Croly* (1913), 54 Ind. App. 566, 96 N. E. 973, 98 N. E. 1091. See also *Evansville, etc., Traction Co.* v. *Johnson* (1913), 54 Ind. App. 601, 97 N. E. 176.

Upon analysis of these decisions it seems clear to us that the doctrine of last clear chance applies to permit a recovery by the plaintiff where the danger threatening him was actually discovered by the defendant, and under the circumstances surrounding the particular case, the peril ought to have been realized by the defendant, in the exercise of ordinary care, in time to have averted the accident, notwithstanding the plaintiff was physically able to escape the danger until the instant before the impact and was guilty of continuous and concurrent negligence in that

he remained oblivious of his own danger, which it was his duty to discover and realize. In the instant case, the appellant's head brakeman riding on the left side of the engine cab saw the appellee's automobile when it was 145 to 150 feet from the crossing where the accident occurred, and observed it continuously from that time until the moment of impact and did nothing to cause the whistle to be sounded or the train to slacken speed until such action was too late to be effective. Under the rule above enunciated, the liability of the appellant for the appellee's ensuing injuries hinges upon whether or not an ordinarily prudent person, under the conditions and circumstances surrounding the appellant's head brakeman at the time and place, would have realized that the appellee was not going to yield the right-of-way over the crossing to appellant's train, and that such realization would have come to such person in time to have averted the accident in the exercise of reasonable care.

Except for the appellee's conduct as he approached the crossing in controversy there is nothing disclosed by the evidence that indicated to those in charge of the appellant's train that he was probably unaware of its dangerous proximity, and would proceed on to the track unless warned of his peril. Therefore, if any such knowledge is chargeable to the appellant, it must be because of something the appellee did or failed to do during the time he was under the observation of the head brakeman. If there was nothing about his conduct during that period of time to indicate that he did not see the train which was in plain view or was oblivious of its approach and probably would not stop, the appellant had every right to presume that he did see it and would stop, and if, when it became apparent that he was not going to do so, it

was too late for the appellant to have done anything to avert the accident, the doctrine of last clear chance has no application.

The appellee contends that the Croly and Stevenson cases, *supra*, from which we have quoted at some length, are decisive of the case at bar, and clearly hold that the last clear chance doctrine is applicable to the facts disclosed by this record. We agree that the present case is one of that general class of cases to which the principles of law enunciated in the Croly and Stevenson cases apply, and by which the liability of the appellant must be determined, but we cannot agree that the controlling facts are the same and that the decisions in those cases, necessarily determine the decision in this one. In the Croly case, there were two street cars approaching each other from the east and west on Roosevelt Avenue in the City of Indianapolis. The plaintiff, a girl of eleven years, attempted to cross the street in a diagonal direction, and in doing so walked across the south street car track about fifteen feet in front of the east bound car and stepped on to the north track about four feet in front of the west bound car, and was thereupon struck and injured. The motorman saw her leave the curb at a fast walk in a northwesterly direction with her back partially toward him. She walked directly in front of the car coming from the east without once looking backward in that direction. On such a state of facts, it was held that the court properly submitted to the jury the question of whether an ordinarily prudent man would have realized her danger in time to have averted the accident. Her tender years, her fast walk in a direction that left the car that struck her out of her range of vision all tended to make it apparent that she was unaware

of her danger and would, unless warned, probably place herself in a position of immediate peril.

In the Stevenson case, the plaintiff was driving a horse drawn buggy, the top of which was up and the curtains drawn. He turned into a private drive at a point about sixty feet from its intersection with the defendant's tracks, and from there drove his horse at a trot on to the crossing and was struck by an interurban car, the motorman in control of which had seen him so approaching, and observed nothing that indicated he would stop. The driveway upon which the plaintiff approached was along a curve leading from a public highway, paralleling the tracks, to the crossing in question, and as the buggy traveled the length of the driveway, the backs of the occupants were toward the oncoming car, and it was not until the roadway almost reached the crossing that its curve brought it at right angles to the defendant's tracks. On these facts and the inferences that can reasonably be drawn therefrom the court held that it could not say as a matter of law that the defendant's motorman was not chargeable with a realization that the plaintiff was oblivious to his danger and would drive his vehicle on to the track in front of the approaching car.

There is a sharp distinction between the facts upon which the Croly and Stevenson decisions rest and those involved in the case at bar. Here a person of mature years is concerned. He approached the railroad tracks in question at an angle that brought the approaching train directly in his line of vision for a distance of 145 to 150 feet before he reached the crossing. Over all of that distance he drove his automobile at a speed that enabled him to stop in two or three feet and the passenger riding with him was seen by the brakeman in the engine cab to be looking directly toward the

train. We find nothing in the conduct or appearance of the appellee, as disclosed by such evidence, to indicate that he did not see the approach of the train, or that he was oblivious to his danger, and would not stop at a safe distance from the tracks. We cite with approval the following expression of the Civil Court of Appeals of Texas on facts very similar to those of the case at bar:

". . . we know of no case in which it has been held that such operatives could or should reasonably anticipate that an automobile approaching a railway track at four or five miles per hour, driven by persons possessed of ordinary intelligence, would go upon the railway track in front of an approaching passenger train in plain view, which was at the time only fifty to seventy-five feet distant, unless they were doing some act, other than slowly approaching the track, which would reasonably indicate that they intended to go upon the track, and we think that it should never be so held. It seems to us that the natural and reasonable conclusion under such circumstances would be that such persons were intending to and would bring their automobile to a stop before entering upon the railway track; and not that they would do the unreasonable thing of endangering their lives by driving upon the track in front of such approaching train. It seems to us that the slow approach of the automobile to the railway track at the point where the approaching train was in full view and close at hand would have reasonably induced and did induce the operatives of the locomotive to conclude that the driver of such automobile would stop it before it reached such railway track." *Texas & N. O. Ry. Co.* v. *Wagner* (1924), Tex. Civ. App. 262 S. W. 902.

The factual conditions which would impose upon the appellant the special duty defined in the Croly and Stevenson cases, and for the violation of which liability in this class of actions depends, are not shown to be

present in the instant case, and we are of the opinion that there is no room for the application of the doctrine of last clear chance.

The appellee's failure to exercise reasonable care for his own safety having contributed to his injury, and the doctrine of last clear chance being inapplicable to the facts as disclosed by the evidence most favorable to the appellee, we are constrained to hold that the evidence is insufficient to support the verdict on either paragraph of the complaint.

The assignment of errors charges that the damages assessed by the jury are excessive; that a number of instructions given to the jury both upon the court's own motion and at the request of the appellee are erroneous and that the court erred in refusing certain others tendered by the appellant. It does not seem likely that the court below, upon a retrial of the case, will be confronted with the situation which gives rise to these assignments of alleged error and we see no necessity for the expression of an opinion in reference thereto.

Judgment reversed with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 51 N. E. (2d) 384.