## LEWIS ET AL. *v.* MACKLEY ET AL.

[No. 17,973. Filed June 20, 1951. Rehearing denied October 19, 1951. Transfer denied March 4, 1952.]

*Ora L. Wildermuth,* of Gary, *Allen P. Twyman,* of East Chicago; *Leslie H. Vogel* and *George Bunge* (of counsel), both of Chicago, Illinois, for appellants.

*Strom & Spangler,* of Gary, *Edward J. Ryan,* of Valparaiso, for appellees.

BOWEN, J.—This is an appeal from a judgment in an action brought by the appellees, who were the widow and dependent children of one Guy Mackley, deceased. The complaint was grounded upon allegations of an unlawful and malicious conspiracy for the alleged purpose of preventing the bringing of a suit to recover damages for the death of said decedent. The complaint alleged that the appellees' decedent died as a result of injuries suffered in the collision of a milk delivery truck owned by Norman Allen, David Allen, Edward Allen, and Carl Youngren d/b/a/ Prairie View Dairy, driven by their agent, Stephen Gazdick, and a Chevrolet sedan being driven by the decedent. The complaint further alleged that the appellant defendant, Alan E. Lewis, an agent for the appellant defendant, Columbia Casualty Company and such company and the owners of such dairy conspired, schemed, and planned to secure the appointment of the said Alan E. Lewis as administrator of the estate of Guy Mackley, deceased, to defeat the chose in action for the alleged wrongful and negligent acts in causing the death of said decedent,

Guy Mackley, and that the defendants, through Alan E. Lewis, did further conspire, scheme, and plan to defeat the plaintiffs' rights as the widow and dependent children of such decedent to recover for the decedent's alleged wrongful death by failing to institute an action for such wrongful death.

Issues were joined upon five paragraphs of complaint and appellants' answer in two paragraphs.

The cause was tried to a jury, and the jury returned a verdict in favor of the appellees and against the appellants, Alan E. Lewis, and the Columbia Casualty Company in the sum of $18,000, upon which verdict judgment was rendered for appellees.

Errors assigned for reversal and not waived, are that the trial court erred in overruling appellants' motion to strike out appellees' second paragraph of reply to appellants' amended and supplemental second paragraph of answer; that the court erred in overruling appellants' demurrer to the second paragraph of appellees' reply to appellants' amended and supplemental second paragraph of answer; and, that the court erred in overruling appellants' motion for a new trial.

Appellants' assignments of error present the question as to whether there is sufficient evidence of probative value that there had been any negligent act committed by the driver of the Prairie View Dairy truck which was the proximate cause of the accident which resulted in the death of the decedent, Guy Mackley, and whether there is sufficient evidence of probative value to justify the submission of such cause to the jury under the doctrine of "last clear chance." The evidence in regard to the happening of the accident is undisputed.

The questions presented by this assignment of error must be determined upon a basis of the physical facts and circumstances, and the testimony of Stephen Gaz-

dick, the driver of the truck belonging to the Prairie View Dairy. Gazdick testified in relating how the accident happened, "I was driving north down Clark Road between 10th and 5th avenues in Gary, Indiana. I seen an automobile approaching me from the opposite direction and he seemed to be gradually coming over to my side of the road, so I didn't know at first what to expect of it. When I seen that he kept on coming toward me, I pulled my truck over to the side of the road as far as I could go. I pulled two wheels off the pavement completely and I stopped and just waited under the dash, and I no sooner stopped when the automobile crashed into the front end of my truck."

He testified that the other car was possibly a block away when he first saw it edging over, and such car continued edging over to his side of the road during that block. Gazdick testified that he continued going north on Clark Road at his normal rate of speed which he said was not over 25 miles per hour until he came to a stop. When he saw the decedent's car coming toward him, he edged off the pavement and came to a stop. He testified that there was a big ditch off from where he stopped, and if he had not stopped suddenly he would have toppled over, and he would have gone over in a hole five or six feet deep on the side of the road if he had pulled off anymore. Such hole or ditch was ten to fifteen feet wide. Gazdick's truck was struck by the car of the decedent when two of the truck's wheels were some two or three feet off of his side of the pavement, and the front ends of the two vehicles came together. The witness Gazdick also testified that "at the time I thought . . . after this accident happened my thoughts were that the decedent had fallen asleep at the wheel of his car." Gazdick also testified that the time was too short and that he did not have an oppor-

tunity to get a view of decedent or tell for sure whether he was asleep "or anything."

From the undisputed evidence in this case, we are confronted with a situation where the decedent drove his car over into the wrong side of the highway and collided with the truck being driven by the agent of the Prairie View Dairy Company, and the driver of such truck, in the meantime, had observed the approach of such car for about a block, and had observed the fact that such car was edging over to the wrong side of the highway, and the driver of the truck continued forward and when he saw the car keep coming toward him, he pulled the truck over to the side as far as he could go with two wheels off the pavement completely and ducked under the dash until the collision occurred.

Do such circumstances, as related above, bring this case within the doctrine of the "last clear chance," or present circumstances which justify the submission of this cause to a jury under the doctrine of the "last clear chance"?

The application of the doctrine of "last clear chance" has been firmly established by the courts of this state, and stated broadly is that the negligence of the plaintiff does not prevent a recovery for the negligence of the defendant where it appears that the defendant by exercising reasonable care, might have avoided injuring the plaintiff, notwithstanding the plaintiff's negligence. *Indianapolis Traction, etc. Co.* v. *Kidd* (1906), 167 Ind. 402, 79 N. E. 347; *Indianapolis Traction, etc., Co.* v. *Smith* (1906), 38 Ind. App. 160, 77 N. E. 1040; *Indianapolis St. R. Co.* v. *Bolin* (1907), 41 Ind. App. 266, 78 N. E. 210, 83 N. E. 754; *Indianapolis St. R. Co.* v. *Schmidt* (1904), 35 Ind. App. 202, 71 N. E. 663, 72 N. E. 478; *Southern Ind. R. Co.* v. *Fine* (1904), 163 Ind. 617, 72 N. E. 589; *Terre Haute, etc., Traction*

*Co.* v. *Stevenson* (1919), 189 Ind. 100, 123 N. E. 785; *Indianapolis Traction, etc., Co.* v. *Croly* (1913), 54 Ind. App. 566, 96 N. E. 973; *Chesapeake & O. Ry. Co.* v. *Williams* (1943), 114 Ind. App. 160, 51 N. E. 2d 384; 38 American Jurisprudence 900, §215.

The doctrine of "last clear chance" is not an exception to the long established rule that contributory negligence on the part of the person injured is a bar to recovery unless the injury is wantonly or willfully inflicted, nor is the rule of comparative negligence recognized by the courts of this state. The proper application of the doctrine of "last clear chance" does not permit an injured person to recover in spite of negligence on his part contributing to the injury, but it does permit a recovery notwithstanding a want of due care on the part of the plaintiff in cases where the facts are such that it may be said that the plaintiff's want of due care was not the proximate cause of the injury and that the defendant, in the exercise of due care might have avoided the injury, and that his failure to exercise due care, therefore, is the proximate cause of the injury in question. *Indianapolis Traction Co.* v. *Croly, supra.*

The appellees cite and rely upon the case of *Cheasapeake & O. Ry. Co.* v. *Williams, supra,* and particularly the enunciation of the rule as stated in such opinion: "It seems clear to us that the doctrine of last clear chance applies to permit a recovery where the danger threatening him was actually discovered by the defendant, and under circumstances surrounding the particular case, the peril ought to have been realized by the defendant in the exercise of ordinary care, in time to have averted the accident, notwithstanding the plaintiff was physically able to escape the danger until the instant of the impact and was guilty of continuous and

concurrent negligence in that he remained oblivious to his own danger, which it was his duty to discover and realize." The appellees insist that the facts in the case at bar bring it within the above rule which is the law of this state.

It is true that the danger threatening plaintiff's decedent and his peril was discovered by the defendant's truck driver, Gazdick. However, there is a total lack of circumstances to raise a question of fact for the jury as to whether Gazdick, after discovering decedent's peril, in the exercise of ordinary care could have averted the accident, or whether any act or omission on his part was the proximate cause of decedent's death. From the record in this case, it is apparent that Gazdick did what any reasonable or prudent person would have done, under like and similar circumstances. Decedent's car started crossing over into the wrong or north bound lane of traffic a block away. Gazdick had every right to presume that decedent's car would get back in its proper lane. *Huddy, Ency. Automobile Law*, 9th Ed., Vol. 3-4, §116. Gazdick was driving on the right side of the highway at a moderate rate of speed. It is apparent he had his car under control and pulled off the road prior to the impact until two wheels were off the pavement and as close as he could get without going into a ditch ten to fifteen feet wide and six feet deep. Where the evidence is undisputed, its effect is a matter of law, which, if misapprehended by the trial court, is subject to review. *Bragdon* v. *Bruce* (1950), 120 Ind. App. 497, 92 N. E. 2d 646.

Also, in the *Chesapeake & O. Ry. Co.* v. *Williams, supra,* this court, while announcing the rule as set forth, on facts somewhat similar to the instant case, held that there was no basis for the application of the doctrine of the "last clear chance" in the following language:

"There is a sharp distinction between the facts upon which the *Croly* and *Stevenson* decisions rest and those involved in the case at bar. Here a person of mature years is concerned. He approached the railroad tracks in question at an angle that brought the approaching train directly in his line of vision for a distance of 145 to 150 feet before he reached the crossing. Over all of that distance he drove his automobile at a speed that enabled him to stop in two or three feet and the passenger riding with him was seen by the brakeman in the engine cab to be looking directly toward the train. We find nothing in the conduct or appearance of the appellee, as disclosed by such evidence, to indicate that he did not see the approach of the train, or that he was oblivious to his danger, and would not stop at a safe distance from the tracks. We cite with approval the following expression of the Civil Court of Appeals of Texas on facts very similar to those of the case at bar:

" '. . . we know of no case in which it has been held that such operatives could or should reasonably anticipate that an automobile approaching a railway track at four or five miles per hour, driven by persons possessed of ordinary intelligence, would go upon the railway track in front of an approaching passenger train in plain view, which was at the time only fifty to seventy-five feet distant, unless they were doing some act, other than slowly approaching the track, which would reasonably indicate that they intended to go upon the track, and we think that it should never be so held. It seems to us that the natural and reasonable conclusion under such circumstances would be that such persons were intending to and would bring their automobile to a stop before entering upon the railway track, and not that they would do the unreasonable thing of endangering their lives by driving upon the track in front of such approaching train. It seems to us that the slow approach of the automobile to the railway track at the point where the approaching train was in full view and close at hand would have reasonably induced and did induce the operatives of the locomotive to conclude that the driver of such automobile would stop it before

reached such railway track.' *Texas & N. O. Ry. Co.* v. *Wagner* (1924), Tex. Civ. App. 262 S. W. 902.

"The factual conditions which would impose upon the appellant the special duty defined in the *Croly* and *Stevenson* cases, and for the violation of which liability in this class of actions depends, are not shown to be present in the instant case, and we are of the opinion that there is no room for the application of the doctrine of last clear chance.

"The appellee's failure to exercise reasonable care for his own safety having contributed to his injury, and the doctrine of last clear chance being inapplicable to the facts as disclosed by the evidence most favorable to the appellee, we are constrained to hold the evidence is insufficient to support the verdict on either paragraph of the complaint."

Applying the *Chesapeake & O. Ry. Co.*, case to the case at bar, we have the decedent driving an automobile south on Clark Road approaching and meeting the truck being driven by Gazdick. As the cars approach each other beginning about a block away, decedent's car starts edging into the wrong lane of traffic and going toward the truck coming in the opposite direction. Prior to the impact, he had pulled off the traveled portion, as far as he could get without going into a deep ditch. When a car starts edging into the wrong side of the road a block away, drivers meeting such vehicle have a right to presume that the driver will get back into his right lane before passing such other vehicle, and they are not required to take to the ditch upon the discovery of such peril or thereby suffer liability under the doctrine of the "last clear chance" for an ensuing accident.

The evidence clearly established that Gazdick did what any reasonable or prudent person would have done under like or similar circumstances.

For the reasons given herein, the trial court erred in overruling appellants' motion for a new trial, and in

overruling appellants' motion for a directed verdict at the close of appellees' evidence.

While this court does not wish to condone the actions of the appellants under the circumstances shown in the record in connection with the issuance of letters of administration and the various actions to delay and prevent the bringing of suit, it does not appear that appellees have been harmed thereby.

Any action of appellants in connection with the conspiracy to prevent the bringing of a suit to recover damages for decedent's death were harmless to appellees by reason of the fact that under the evidence in this case a good cause of action does not exist against the partners d/b/a/ Prairie View Dairy Company, for alleged negligence of their truck driver, Stephen Gazdick, in allegedly causing the death of the decedent.

Other errors assigned for reversal may not arise on a retrial of this case, and because of the conclusions reached herein, the court deems it unnecessary to further extend this opinion.

The trial court erred in overruling the motion for a directed verdict for appellants at the close of appellees' evidence. Judgment reversed with instructions to sustain appellants' motion for a new trial.

NOTE.—Reported in 99 N. E. 2d 442.