Christ P. KORONIOTIS and Lottie Koroniotis, Appellants (Plaintiffs Below),

v.

LA PORTE TRANSIT, INC., John Compton and James H. Drew Corporation, a/k/a James Drew Company, Appellees (Defendants Below).

No. 3–1278A318.

Court of Appeals of Indiana,
Third District.

Dec. 11, 1979.

William G. Conover, Roger K. Claudon, Conover, Claudon & Chew, Valparaiso, for appellants.

Jay A. Charon, Robert P. Kennedy, Crown Point, for LaPorte Transit, Inc., and John Compton.

Charles K. Whitted, David W. Pera, Whitted & Buoscio, Merrillville, for James J. Drew Corp. a/k/a James Drew Co.

STATON, Judge.

Christ P. Koroniotis and his wife, Lottie Koroniotis, filed a negligence action against defendants LaPorte Transit, Inc. (LaPorte), John Compton (Compton) and James H. Drew Corporation, a/k/a James Drew Company (Drew). They alleged that the defendants' negligence caused injury to Christ Koroniotis and the loss of his services to his wife in an accident which occurred on the westbound lane of the Indiana Toll Road. The Koroniotises' trial to a jury commenced on May 8, 1978. At the close of the Koroniotises' case in chief, the court granted the motions for judgment on the evidence filed by LaPorte Transit, Compton and Drew.

On appeal, the Koroniotises raise three issues for our review:

(1) Was the judgment on the evidence entered by the trial court in favor of the defendants at the close of Koroniotises' case in chief contrary to the evidence?

(2) Was this judgment on the evidence contrary to law?

(3) Did the trial court err in sustaining defendants' objection to the hypothetical question submitted to Koroniotises' accident reconstruction expert?

We affirm.

The facts relevant to our disposition of the case are as follows. Christ Koroniotis was a member of a car pool which commuted to and from work in Chicago by means of a 12-passenger van. The twelve members of the group lived in southwestern Michigan and northern Indiana.

Prior to August 2, 1974, the James H. Drew Corporation (Drew) was engaged in a highway improvement project pursuant to a contract with the Indiana Toll Road Commission. The project involved the installation of a formed concrete median barrier between the eastbound and westbound lanes of the Indiana Toll Road. The work necessitated the use of a large crane and the blocking off of the westbound passing lane of the toll road for three miles prior to the construction. The crane was located near a bridge overpass in the blocked off passing lane. The signs set out to warn motorists of the construction consisted of several 40 mile per hour speed reduction signs and a flashing arrow board which merged traffic into one lane. There were no "flagman ahead" signs installed to warn motorists who were approaching the construction site.

At approximately 7 a. m. on August 2, 1974, four westbound automobiles approached the construction site at or below the posted 40 mile per hour speed. The vehicles in sequence were: a white Ford driven by Ms. LaBroi (LaBroi), an orange Karmann Ghia driven by Mr. Geary (Geary), a passenger van driven by Mr. Koroniotis (Koroniotis) and a tractor-trailer unit driven by Mr. Compton (Compton).

Approximately 100–200 feet before the crane, a flagman, employed by Drew, was positioned one foot into the barricaded passing lane to flag traffic. As LaBroi approached the flagman, she reduced her speed considerably and came almost to a stop. Geary slowed accordingly behind her.

Koroniotis was traveling around 40 miles per hour at a distance of 20 to 25 feet behind Geary. He testified that when he saw Geary slow his car, he began to pump his brakes. When it became apparent that he would not be able to stop in time, Koroniotis turned left into the barricaded passing lane. He struck the rear of Geary's car in the process. Koroniotis continued moving in the left lane, coming to a stop nearly two van lengths from the point of impact with Geary. There were no skid marks left by the van.

Compton was traveling at approximately 40 miles per hour at a distance of 75–100 feet behind Koroniotis. When Compton saw the van's brake lights flash on, he applied his brakes as well. He too turned his semi-truck into the barricaded left lane, and struck Koroniotis' van, also in the left lane. His truck then struck the van a second time and pushed it against the crane, causing appellants' complained of injuries and damages.

■ Generally, the question of negligence is one to be given to the jury. *Walters v. Kellam & Foley* (1977), Ind.App., 360 N.E.2d 199. However, before a jury may consider it, the trial court must determine three questions of law. It must decide: (1) whether the defendant owes the plaintiff a duty, (2) what standard of care should be imposed on that duty, and (3) whether the evidence introduced by the plaintiff at trial is sufficient to let the jury find that the plaintiff has established the elements of the cause of action. *Miller v. Griesel* (1974), 261 Ind. 604, 308 N.E.2d 701; *Elliott v. State* (1976), Ind.App., 342 N.E.2d 674.

■ In deciding whether the defendant owes a duty to the plaintiff, the nature of their relationship must be analyzed. The defendants here are two parties: Compton and LaPorte, the employee truck driver and the employer trucking company, and Drew Construction Company, the company responsible for maintenance of traffic and traffic flow during the construction work on the Indiana Toll Road. In Indiana, a motorist has a duty to use due care to avoid a collision and to keep his vehicle under

reasonable control. *Chaney v. Tingley* (1977), Ind.App., 366 N.E.2d 707. He also has a duty to maintain a lookout while traveling on a highway. *Chaney, supra.* As to Drew's duty to Koroniotis, a contractor, performing work on a public highway, has a duty to the traveling public to take proper precautions to protect it from a dangerous obstruction, created by his own acts, on that highway. *City of Gary v. Bontrager Construction Co.* (1943), 113 Ind.App. 151, 47 N.E.2d 182, 187.

Having recognized a duty exists, the trial court must ascertain what standard of care will be imposed upon the relationship between plaintiff and defendant. *Miller v. Griesel, supra.* The standard of care utilized by Indiana courts is whether the defendant exercised his duty with the same level of care as would a reasonable and prudent man in the same circumstances. *Miller, supra.* Here, Compton and LaPorte had, at the very least, a duty to exercise ordinary and reasonable care in the operation of the semi-truck to avoid causing injuries to other motorists on the highway. Drew had a duty to exercise reasonable and ordinary care in guarding the traveling public from the obstruction on the highway, created by its construction work.

■ The third question of law to be addressed by a trial court is whether the plaintiff's evidence is sufficient to establish the elements of the cause of action. *Miller, supra.* In Indiana, the tort of negligence consists of three elements: (1) a duty owed to the plaintiff by the defendant, (2) a failure of the defendant to conform his conduct to the standard of care required by the relationship, and (3) the injury caused to the plaintiff by the defendant's failure. *Orth v. Smedley* (1978), Ind.App., 378 N.E.2d 20.

■ In the case at hand, the trial court seemingly had little trouble in finding duties owed by the defendants to the plaintiffs or a breach of those duties. It focused, instead, upon whether there was a reasonable connection between the defendants' acts or omissions and the plaintiffs' injuries, i. e., the question of proximate cause. A proximate cause of an injury is one which sets in motion the chain of circumstances leading to the injury. *Johnson v. Bender* (1977), Ind.App., 369 N.E.2d 936. An essential element of proximate cause is considered to be the foreseeability of an injury. *Johnson, supra.* Unless the injury was one which, in the light of the circumstances, should have been reasonably foreseen, the negligence will not be deemed to have been the proximate cause of the injury. *New York Central Railroad Company v. Cavinder* (1965), 141 Ind.App. 42, 211 N.E.2d 502. It is not necessary that the defendant's negligence be the only proximate cause. *Meadowlark Farms, Inc. v. Warken* (1978), Ind.App., 376 N.E.2d 122. Where two causes proximately lead to an injury, one of which is attributable to negligence while the other is not, a party will be liable to the extent of his negligent act. *Meadowlark Farms, Inc., supra.*

■ The trial court concluded that, as a matter of law, the plaintiffs had failed to introduce sufficient evidence as to the element of proximate cause. Accordingly, it granted the defendants' motions for judgment on the evidence at the close of the plaintiffs' case in chief. A judgment on the evidence for a defendant is proper only if the plaintiff fails to present evidence of probative value on one or more of the elements necessary to a recovery on the claim made. *Walters v. Kellam & Foley* (1977), Ind.App., 360 N.E.2d 199. Specifically, the Indiana Supreme Court in *Hendrix v. Harbelis* (1967), 248 Ind. 619, 230 N.E.2d 315, 318 said that:

> "It is only where there is a *total absence of evidence* or legitimate inferences in favor of plaintiff upon the issues, or where the evidence is without conflict and is susceptible of but one inference and that inference in favor of the defendant, that the court may give a peremptory instruction, . . . " (Our emphasis)

*See also Mamula v. Ford Motor Company* (1971), 150 Ind.App. 179, 275 N.E.2d 849. A ruling on a motion for judgment on the evidence is limited to a consideration of the

evidence and all reasonable inferences drawn therefrom, most favorable to the party against whom the motion is made. *Meadowlark Farms, Inc., supra.*

The Koroniotises maintain, on appeal, that they have introduced ample evidence on each element of negligence. They urge that the trial court's judgment on the evidence is thereby contrary to the evidence as well as contrary to the law.

After a review of the voluminous trial record, we conclude that there was sufficient evidence of negligence for submission to the jury. However, the trial court's granting of the motion for judgment on the evidence was proper because of the contributory negligence on the part of Koroniotis. He virtually admitted his negligence when he testified that he was 25 feet too close to Geary to avoid hitting him at a speed of 40 miles per hour.

In Indiana, the issue of contributory negligence is generally one of fact for a jury to determine where the facts are such as to be subject to more than one reasonable inference. But, where the facts are undisputed and only one inference can be reasonably drawn, then contributory negligence becomes a question of law. *Meadowlark Farms, Inc. v. Warken* (1978), Ind.App., 376 N.E.2d 122. There are no degrees of negligence in Indiana. If the plaintiff is guilty of any negligence, however slight, and this negligence proximately contributes to his injury, he cannot recover. *Huey v. Milligan* (1961), 242 Ind. 93, 175 N.E.2d 698. We are persuaded that the record is such that, as a matter of law, we must find Koroniotis guilty of the negligence which proximately caused or contributed to cause the collision in question.

Even the doctrine of "last clear chance", as to the defendant truck driver, is inapplicable here. For it to apply, the plaintiff, through his own negligence, must have put himself in a perilous position to which he was oblivious or from which he could not have extricated himself. The defendant must have known of the plaintiff's position and must have had the last clear chance to have avoided causing the plaintiff

injury. In addition, the defendant must have failed to exercise due care in preventing the injury. *Sims v. Huntington* (1979), Ind., 393 N.E.2d 135.

Our Supreme Court in *Sims, supra,* at p. 138, pointed to the time element implicit in this doctrine. It said:

"In order for the doctrine to apply, the peril must be known 'in time to clearly afford an opportunity [for the defendant] to avoid injuring the one in peril.' . . ."

There is no evidence in the record to suggest that the defendant truck driver, following Koroniotis, had the time to control his truck so as to prevent the infliction of injury upon Koroniotis.

Finally, Koroniotis argues that the trial court erred when it refused to allow his accident reconstruction expert to give an opinion on the following hypothetical question:

"Now, assuming all these facts to be true and in evidence, what would be the effect of the occurrence of the flagman on the Gostlin Street bridge as described upon the drivers of these vehicles and their reaction and perception time?"

After the court sustained the objection, Koroniotis made the following offer to prove, based upon the expected answer of his expert witness:

"I'm now making an offer to prove concerning the expected answer of the witness to the said hypothetical question and based upon the facts in the said hypothetical question, I expected the witness to answer that at the appearance of the flag would surprise the driver of the first vehicle in the absence of any sign prior thereto stating, 'Flagman ahead' and further, the effect on the driver of the first vehicle would be such that would cause her to slow down to a complete stop and further effect would be that the driver of the second vehicle would have to make a sudden stop and the further effect would be that the driver of the third vehicle would have to make a sudden emergency stop, even though there would

not be sufficient space on the highway to make such emergency stop; further, the driver of the fourth vehicle would likewise be that he would have to make an emergency stop with no adequate space being available to him to use on the highway, all of the same contributing to the subject collision."

■ The Court in *Dahlberg v. Ogle* (1978), Ind., 373 N.E.2d 159 suggests that if an opponent deems a hypothetical question to be unfair because it does not include all the pertinent facts from the evidence, a remedy is afforded by cross-examination. This, undoubtedly, is true as long as the facts are in evidence and the hypothetical question is worded so as not to confuse the jury. A hypothetical question does not need to contain all the facts in evidence. *Walters v. Kellam & Foley* (1977), Ind.App., 360 N.E.2d 199, 219. The Court there stated:

"It [hypothetical question] must, however, contain sufficient facts and inferences to present a true and fair relationship to the whole evidence in the case. It must not be so worded or exaggerated as to mislead or confuse the jury; and it must not be so lacking in essential facts as to be without value to the decision. . . . "

■ The hypothetical question presented by Koroniotis could have easily conveyed a distorted impression of the circumstances surrounding the collision to the jury. Because the question lacked those facts which would have presented "the true relationship to the whole evidence" we conclude that the question was sufficiently misleading or confusing to the jury as to be without value to the decision. It was properly excluded.

We affirm the trial court's judgment.

GARRARD, P. J., and HOFFMAN, J., concur.