Shelvy BROCK and Carol Brock, Appellants (Plaintiffs Below),

v.

E. Spencer WALTON, Special Administrator of the Estate of Phyllis J. Shearer, Appellee (Defendant Below).

No. 2-382A79.

Court of Appeals of Indiana, Second District.

Dec. 14, 1983.

Russell H. Hart, Stephen E. Yeager, Stuart, Branigin, Ricks & Schilling, Lafayette, for appellants.

Tom F. Hirschauer, Logansport, for appellee.

SULLIVAN, Judge.

Shelvy and Carol Brock, plaintiffs in a negligence suit against defendant, E. Spencer Walton, as special administrator of the estate of Phyllis J. Shearer, challenge the judgment on a jury verdict for the defendant as not supported by sufficient evidence and as contrary to law.[1] We reverse and remand for a new trial.

The evidence revealed that on July 21, 1978, at about 3:00 p.m., Shelvy Brock (Brock) and his son Derrick, were traveling southbound in a 1977 Chevrolet Suburban on Indiana State Highway 25. State Police Officer Sabatini testified that Highway 25 is a flat two-lane blacktop road divided by a broken white line and that July 21 was a clear, sunny day allowing visibility of about one mile in either direction.

Brock was following his friend, Dean Dorton, who was driving a Chevrolet "wrap around" van, at a speed of about 50 to 55 miles per hour. The posted speed limit was 55 miles per hour.

Northbound on the same road was John Fithian. From 50 to 100 feet behind, Fithian was following decedent Phyllis Shearer's car, a 1978 Ford coupe. Fithian stated that he had "picked up" the Ford shortly after Delphi and had been following decedent's car for approximately 15 miles. He observed that decedent drove at a rate which fluctuated from 40 to 60 miles per hour. As they approached Logansport, the speed of decedent's car fluctuated more frequently. Fithian also noticed decedent's car cross both the center line and the shoulder line. He estimated that during the 15 miles she had crossed the center line at least 5 times with her left wheels, but the rest of her car still remained in the northbound lane.

Dean Dorton (Dorton) testified that he first saw Mrs. Shearer's vehicle when it was approximately 100 to 200 feet away from his van. Both Fithian and Dorton testified that at this time decedent's entire car swerved across the center line and headed towards Dorton's van, forcing him to swerve right towards the west berm and onto a grassy area. He glanced at his rearview mirror in time to see the head-on collision between Shearer's car and Brock's van. Officer Sabatini confirmed that the collision occurred on the "extreme" west berm of the southbound lane, that Brock's van was approximately 5 to 6 feet off the road, with both left wheels still on the pavement. Skid marks of approximately 62 feet made by Brock's van started from the center of his lane at an angle towards the west berm. Decedent's car was estimated to have been traveling at 55 miles per hour up to the point of impact, and left no skid marks on the road.

Fithian testified that shortly before the collision, Shearer's car abruptly returned to the northbound lane after it had headed straight towards Dorton's van. He also testified that Dorton's van swerved to the right at about the same time that Shearer's car swerved back to the northbound lane. The following is an excerpt from his testimony:

"Q. When she swerved over was the majority or all or how much of her car went over into the left lane?

A. The majority of her car.

Q. What did you observe that vehicle, the one that went to the ditch, tell me about that. What did you see that vehicle do?

A. All I saw it do was dart off to the right side off the road as quickly as it could to avoid her car.

Q. After that what did the Mrs. Shearer's vehicle, the Ford, do?

A. It came abruptly back into the right lane.

Q. All right. Behind the vehicle that had to take to the ditch, is that where the Suburban was?

A. Yes.

Q. When did you first see the Suburban?

1. Because we reverse we do not reach appellants' arguments concerning errors in the trial court's giving an instruction, its denial of their motion for a new trial, and its admission into evidence of a deposition by a doctor.

A. I must have seen the Suburban as soon as she swerved back into the right lane. Because that was the time when the left lane was open for me to see it. Because the other car was obviously in the ditch and she was in the right lane.

Q. All right. In other words . . .

A. I saw at least by that time.

Q. In other words, she swerved over and the first vehicle took to the side of the road. She swerved back and that's your first recollection of seeing the Suburban?

A. Yes.

Q. Do you have any idea what your distance was from the Suburban at that time?

A. My distance couldn't have been any more than a hundred (100) yards or a hundred-fifty (150) yards from the . . .

Q. From the Suburban?

A. From the Suburban.

Q. When you first saw the Suburban are you able to tell us its speed? Do you have any idea what speed it was traveling?

A. No. It's almost impossible to tell what speed a car is traveling when it is coming towards you.

Q. Would you, please, describe what you saw from the time you first saw the Suburban until the point of impact of the accident?

A. After the Ford came back into the right lane, she only *stayed in the right lane for a few seconds and then went back again fully into the left lane and hit the Suburban head-on.* The Suburban, as I said earlier, must have been following closely behind the other vehicle that had gone into the ditch. Not because I could perceive that they were right behind each other but because of *the time span that elapsed between the time she went over in the left lane, forced the first car into the ditch, came back stayed there only a few seconds and then went over again and hit the Suburban head-on.*

Q. And, are you able to tell us how far, how much distance was actually between the vehicle in front of the Suburban and the Suburban?

A. I'm only able to estimate that it had to have been fifty (50) or a hundred (100) yards (sic), if it was a normal following distance.

Q. You indicated that they had to be close because of the amount of time. Are you able to tell us the amount of time or estimate the amount of time from the time Mrs. Shearer pulled back into her lane to the right lane and then crossed over toward the Brock vehicle?

A. Only a few seconds." Record at 405–407 (Emphasis supplied).[2]

The jury returned a verdict for Derrick Brock who joined in the negligence suit as a plaintiff, but returned a verdict against Shelvy and Carol Brock. The parties agree that in reaching this verdict, the jury must have found decedent negligent but also necessarily found Shelvy Brock (Brock) guilty of contributory negligence. Defendant directs our attention to the following testimony of Shelvy Brock which, it is claimed, conclusively shows that Brock failed to maintain a proper lookout. During direct examination of Brock, the following exchange took place:

"Q. At some point prior to this accident do you recall seeing Mrs. Shearer's vehicle, the vehicle with which you were involved in an accident?

A. No.

Q. Let me ask you, Shelvy, what your last memory up to the time of impact?

A. Well, the last thing I remember, I seen a car coming towards me. . . .

---

2. It may be noted that if Fithian, as is likely, meant to say the Suburban was following Dorton at 50 to 100 *feet,* the elapsed time of the events in question would be lessened.

Q. When you saw a car coming towards you, where was that car in relation to you?

A. It was on my side of the road. Right in front of me.

Q. Do you have any memory of that car before then?

A. No.

Q. Do you have any memory of other traffic before then? Either Dorton's vehicle or any other cars, Mr. Fithian anybody?

A. No.

Q. After you saw that car coming toward you, do you have any further memory at all?

A. No." Record at 432–433.

However, during cross-examination, defendant's attorney elicited this testimony:

"Q. Now, I want to go just very briefly to the collision and the facts as I understand you have given on the collision. You were asked by Mr. Yeager and I've written it down. Did you see Mrs. Shearer's vehicle prior to impact? And, your answer was, no.

MR. YEAGER: Your Honor, I want to object because, I think, it doesn't state my question. I think my question was, do you remember seeing.

MR. HIRSCHAUER: I don't think it does. We'll look at the record. But, we'll ask you, if there's any problem. *Did you see Mrs. Shearer's car prior to the impact?*

A. *No.*

Q. Now, there's been some evidence in this case that Mr. Dorton, your friend, was traveling ahead of you and that he left the road and went over into the grassy area. Did you see Mr. Dorton's car leave the road and go over into the grass area?

A. Not as I remember, no.

Q. Well, I didn't ask you that. Did you or did you not see the car?

A. No." Record at 477 (Emphasis supplied).

■ At the outset it is necessary to ascertain and apply the appropriate standard of review. Appellee argues that appellants as plaintiffs attack a negative judgment and therefore reversal is warranted only if the judgment is contrary to law. Appellants counter that such a limited scope of review is inapplicable because the negative judgment standard applies only where a party appeals a judgment on which he had the burden of proof. *Kroger v. Haun* (2d Dist.1978) 177 Ind.App. 403, 379 N.E.2d 1004, 1007. It was defendant-appellee who had the burden to prove the defense of plaintiff Brock's contributory negligence (Ind.Rules of Procedure, Trial Rule 9.1(A)), and, therefore, appellants are entitled to a review not only as to whether the verdict is contrary to law, but also as to the sufficiency of the evidence to sustain the jury's verdict.

■ Contributory negligence is determined and governed by the same standards, tests, and rules as those for determining the negligence of the defendant. *Cartwright v. Harris* (4th Dist.1980) Ind.App., 400 N.E.2d 1192, 1194. It is defined as "the failure of a person to exercise for his own safety that degree of care and caution which an ordinary reasonable and prudent person in a similar situation would exercise." *Kroger Co. v. Haun* (2nd Dist.1978) 177 Ind.App. 403, 379 N.E.2d 1004. Before such negligence will be held to bar recovery, it must be contributory. That is, it must be a proximate cause of plaintiff's injury, *Koroniotis v. LaPorte Transit, Inc.* (3d Dist.1979) Ind. App., 397 N.E.2d 656, 659. Therefore, even if the jury might have reasonably concluded that Brock failed to keep a proper lookout, they could not properly find contributory negligence unless they also found that such failure was a proximate cause of the collision.

■ A motorist has a duty to maintain a proper lookout. *Koroniotis v. LaPorte Transit, Inc., supra,* 397 N.E.2d at 659. However, he is not required to anticipate extraordinary hazards nor to constantly expect or search for unusual dangers. *Opple v. Ray* (1935) 208 Ind. 450, 459, 195 N.E. 81.

Appellants argue that the evidence indicates Brock maintained a proper lookout. Appellants urge us to discount, as contrary to the physical evidence, Brock's own testimony elicited during cross-examination in which he stated that he saw neither Dorton's van swerving off the road nor Shearer's car prior to impact.

■ Testimony which is in direct conflict with established physical facts and common knowledge is incredible and will not support a verdict, but this rule applies only when the physical facts are irrefutably established and permit but one inference. To arrive at conclusions from physical facts alone, however, is often hazardous. Blashfield, *Automobile Law and Practice,* Volume 12, § 437.6 (3d Ed.1977).

■ We are not at liberty to disregard Brock's testimony that he did not see the Shearer vehicle prior to impact. But neither are we at liberty to disregard the irrefutable physical fact that Brock's vehicle left skid marks of 62 feet. Under this set of circumstances it was not reasonable for the jury to infer that plaintiff was guilty of contributory negligence merely because he may have failed to see the Shearer car immediately before impact. The uncontroverted evidence is that Brock was at least aware of a threatening emergency in that he attempted some evasive action.

■ The duty to keep a lookout is imposed upon motorists so that they may acquire knowledge of dangerous situations and conditions to enable them to take appropriate precautionary measures to avoid injury. *See Hawkins v. Whittenberg* (Mo. App.1979) 587 S.W.2d 358, 362. However, the duty to keep a proper lookout and the concomitant duty to take "effective precautionary action" do not necessarily arise at precisely the same moment. *Hawkins v. Whittenberg, supra,* 587 S.W.2d at 362. Therefore, even if plaintiff had or should have seen decedent's vehicle, questions remained as to when plaintiff's duty to take evasive action arose and whether under the circumstances, even in the strictest exercise of the duty to keep a lookout, a reasonably prudent person would have had adequate time in which to take evasive action.

■ Unless a party has notice to the contrary, he has the right to assume others who owe him a duty of reasonable care will exercise such care. *Smith v. Insurance Co. of North America* (4th Dist.1980) Ind.App., 411 N.E.2d 638, 641. Moreover, it has been stated that the driver of a motor vehicle on a public highway who is on his proper side of the highway has a right to presume that the driver of a car approaching from the opposite direction and on the left hand or wrong side of the highway will return to his proper side in time to avoid a collision, and under such circumstances does not have to anticipate he will not do so. *Lewis v. Mackley* (1951) 122 Ind.App. 247, 99 N.E.2d 442, 445.

We must narrow our focus to the sequence of events which began when decedent swerved onto plaintiff's northbound lane and headed towards Dorton's van. Assuming that in the exercise of a proper lookout, Brock would have observed this maneuver, it is only after he had "discovered" and fully appreciated this dangerous condition that he would have had a duty to take evasive action. The pivotal question then becomes whether Brock would have had sufficient time and distance within which to avoid the ultimate collision. If so, then his failure to keep a careful lookout would have been a proximate cause of the injury.

The Missouri Court of Appeals considered a similar situation in *Hawkins v. Whittenberg, supra,* 587 S.W.2d 358. That court held that defendant's failure to keep a proper lookout was not a proximate cause of plaintiff's injury so as to constitute actionable negligence. That Court in quoting from an earlier case stated:

"Having the means and ability to avoid a collision means not only the mechanical appliances, such as steering apparatus with which to swerve, signalling equipment with which to warn, or braking appliances with which to slow down or stop, but also the existence of sufficient

time and distance, considering the movements and speeds of the vehicles, to enable the party charged [with failure to keep a careful lookout] to take effective action in avoidance." 587 S.W.2d at 361.

In summary, the evidence before us discloses that the series of events beginning with the Shearer vehicle's near-collision with Dorton, its abrupt return to the proper lane, and culminating in the impact with Brock occurred in but a few seconds. The maximum distance separating the Shearer vehicle from the Brock vehicle at the outset of these events was approximately 500 feet (the approaching Shearer car was 100–200 feet from Dorton and Brock was following Dorton by between five car lengths and 300 feet.)[3] The Shearer and Brock vehicles approached each other at an approximate speed of 55 miles per hour or 80.67 feet per second. Because of their combined speeds, the distance separating the two vehicles diminished at twice that rate, i.e., 161.34 feet per second. The evidence construed most favorably toward the verdict, clearly demonstrates that between the moment Shearer first swerved, causing Dorton to veer off the road, and the moment of impact, at most 4–5 seconds could have elapsed. Substantially less time elapsed if, as we have stated, Brock's duty, if any, to take evasive action originated only after Shearer had returned to her own northbound lane and had veered into the southbound lane the second time.

Confronted with a vehicle traveling on the wrong lane and approaching him at a high rate of speed, Brock found himself confined to a few feet of berm hemmed in by a fence, and with but a brief instance in which to react to this emergency situation. Indeed, the evidence showed Brock to have attempted some evasive action: his van made skid marks 62 feet long and was discovered almost completely off the pavement and onto the berm.

A motorist is not required to be constantly prepared for every conceivable circumstance, and to insure against every accident, particularly where the dangerous condition was created by the negligence of another. That another person might have acted in a manner which hindsight later proves to be the more judicious does not establish negligence on the part of the motorist. *See* Blashfield, *Automobile Law and Practice,* Vol. 2, § 101.6 (Rev. 3rd Ed.1979); *Lake v. Chicago-Indiana Freight Lines* (7th Cir.1958) 256 F.2d 625, 628–29. For the jury to have concluded that during the time afforded him Brock could have meaningfully appraised the danger before him, weighed the options available to him in the given time and distance, reacted to the danger, and successfully maneuvered his van so as to prevent a collision not only defies reason, but also effectively imposes a standard of conduct much greater than that required by law. Because we find as a matter of law that Brock was not contributorily negligent, we reverse the judgment and remand with instructions to enter a finding for plaintiffs with respect to the liability issue and to conduct a new trial upon the issue of damages.

The judgment is reversed and the cause is remanded.

SHIELDS, J., concurs.

BUCHANAN, C.J., dissents with separate opinion.

BUCHANAN, Chief Judge, dissenting.

I must respectfully dissent.

The jury heard evidence that Brock never saw the decedent's car, either as it ran Dorton's car off the highway or as it approached him head-on. This was devastating evidence of contributory negligence from which the triers-of-fact could well have concluded that Brock breached his duty to maintain a proper lookout; that is, he failed "to see that which [was] clearly visible or which in the exercise of due care would [have been] visible." *Thornton v. Pender,* (1978) 268 Ind. 540, 544, 377 N.E.2d 613, 617. And there is a reasonable inference that, given the excellent road and

---

**3.** But see footnote 2, supra.

weather conditions and the advance warning of danger afforded him, Brock's failure to keep a lookout "in more than a slight or remote degree contributed to or helped to produce [his] injuries." *Huey v. Milligan,* (1961) 242 Ind. 93, 101–02, 175 N.E.2d 698, 702.

It is well established that whether a driver complied with the standard of ordinary care to keep a lookout under the facts of the case is a question for the jury. *See, e.g., Thornton, supra; Northwestern Transit, Inc. v. Wagner,* (1945) 223 Ind. 447, 61 N.E.2d 591; *Board of Commissioners v. Briggs,* (1975) 167 Ind.App. 96, 337 N.E.2d 852, *trans. denied.* It is only when the facts are undisputed and only a single inference can be drawn therefrom that this court may say as a matter of law that a certain course of conduct does or does not constitute contributory negligence. *Northwestern Transit, supra.* General rules for reviewing sufficiency of the evidence claims dictate that we must affirm unless there is a *total* lack of evidence supporting the jury verdict. *See Smart & Perry Ford Sales, Inc. v. Weaver,* (1971) 149 Ind.App. 693, 274 N.E.2d 718.

By various calculations, the majority concludes that Brock could not have avoided the accident, given the amount of distance (500 feet maximum) afforded him. Yet the jury heard testimony that Dorton, with no prior warning and *with significantly less distance in which to react* (200 feet maximum), *did in fact avoid a collision.* I cite Dorton's actions, not as evidence per se of Brock's negligence, but as undisputed proof that directly conflicts with the majority's conclusion and supports the jury's decision.

Of course, the resolution of this problem depends upon more subtle factors than just time and distance. Did the decedent's abrupt swerve back into the northbound lane give Dorton an extra second in which to take evasive action? Did witness Fithian err in his calculation of distance, saying "yards" when he meant "feet"? Did a fence along the side of the road threaten Brock, but not Dorton? These are questions for the jury, and to hold otherwise is to usurp its function as fact-finder.

Having concluded that the jury's finding of contributory negligence cannot be overturned and having found no reversible error in the other issues raised by Brock, I would affirm the judgment.