EWING ET AL. *v.* DUNCAN.

[No. 26,083. Filed October 31, 1935.]

*Walker & Walker, Craig & Mitchell,* and *Alvin F. Sutheimer,* for appellants.

*Benjamin F. Zeig, Wm. J. Foltz,* and *Wm. McClain,* for appellee.

ROLL, J.—This is an action by appellee against appellants to recover damages for personal injuries sustained by Clarence Duncan as a result of alleged negligence of appellant John L. Ewing in driving an automobile on the wrong side of St. Joseph street in the city of Evansville near the intersection of West Illinois street in said city. It appears from the record that on April 10, 1929, appellee, a boy fourteen years of age, was riding a bicycle in company with another boy friend, west on West Illinois street in Evansville, Indiana, about 6 o'clock in the evening. That as they approached the intersection of West Illinois street with St. Joseph street, appellee saw appellant John L. Ewing driving an automobile south on St. Joseph street, and east of the center of said St. Joseph street. Appellee was riding to the left of his friend and as they turned north on St. Joseph street appellee's companion turned north in front of appellee and rode between appellant's car and a truck that was parked on the east side of St. Joseph street and a few feet north of the north curb of West Illinois street. There was insufficient room between appellants' car and the parked truck for both the boys to pass side by side, so appellee's companion pulled ahead

of appellee, but appellant did not drive his car to the west, and appellee tried to turn to the left and collided with the car of appellants. Appellee was thrown to the pavement and appellants' car passed over appellee's right leg, causing a severe fracture of both the tibia and fibula bones. It is alleged that appellants were partners in the automobile business, and that John L. Ewing was on the occasion in question engaged in partnership business. The jury returned a verdict in favor of appellee for five thousand dollars. Appellants' motion for a new trial was overruled and this ruling of the court is the only error assigned on this appeal.

The first question presented by appellant's brief relates to the exclusion of certain evidence offered by appellant. The record on this point is as follows:

"Q. Doctor, at the time that you began the treatment of Clarence Duncan, did you advise any diet that he take?

"The plaintiff objects to the question for the reason that he has been made their witness and was the witness for the plaintiff in this trial previously and was not cross-examined as to the matter.

"The objection is by the court sustained; to which ruling of the court the defendants at the time except.

"The defendants offer to prove by Dr. Sutter, the boy's physician, who was called as a witness yesterday in this case, and in connection with the testimony of Dr. Ruddick, who was called as the plaintiff's physician in this case and the consultant of this witness, that this boy's metabolism was present at the time of the injury, that at the time he prescribed a diet for the boy to be given to him at his home to correct the metabolism, that the family of the boy did not give him this diet, and that consequently the bone did not knit as it should have knitted, that when he found the bone not knitting that he insisted that this diet be given, and that his prescriptions be followed, and that immediately the

recovery began in very excellent shape, and that this witness will so testify if permitted to testify.

"The offer to prove of the defendants is by the court overruled; to which ruling of the court the defendants at the time except."

Appellants contend that this evidence was competent in mitigation of damages upon the theory that it was appellee's duty to substantially follow the instructions of his physician.

The evidence introduced in substance showed the following state of facts. That appellee at the time he received the injuries complained of was about fourteen years old, that he was apparently rugged and several pounds overweight. That immediately after he was taken to the hospital an X-ray picture was taken of appellee's right leg. That the ends of the broken bones were adjusted and the leg placed in a plaster paris cast. That it remained in the cast for about six weeks, and then removed. That other X-ray pictures were taken which showed the bones had not united, but that the ends of the bones had rounded off. The consultant doctor advised an operation, which was performed. Holes were drilled through the bones and they were laced together with a Kangaroo lace and his leg again placed in a cast after this operation. Large doses of calcium was prescribed and taken by appellee and the bones began to unite and knit together in a reasonably short time, and continued to heal in a satisfactory manner until complete union was accomplished. It appears, however, that appellee's right leg is about one-half to three-fourths inch shorter than the left leg, due to two reasons: (1) absorption of the bone at the time of his fracture due to the metabolic disturbance which caused a rounding of the sharp ends of the bone from April 10 to July 2, when the operation was performed; (2) lack of growth during the time of the injury.

It appears that one reason for the bones in appellee's leg not readily knitting was the absence of calcium in appellee's body at the time of the injury, and presumably the evidence offered was for the purpose of showing that the diet prescribed by Dr. Sutter was to supply appellee's body with this compound. Appellant in support of the above alleged error relies upon the rule of law which is to the effect that one asserting personal injury on account of the negligence of another must exercise reasonable care to minimize his damages, and his failure so to do is a matter in mitigation of damages, and that inasmuch as the burden of proof to show facts in mitigation was upon appellant, the court committed reversible error in excluding the above offered evidence.

Appellee raises the technical objection that the record presents no reversible error for the reason that in order to present a question upon the exclusion of evidence, the record must show the person whose evidence is desired to have been present and sworn as a witness. It should further show that a question was propounded to him, an objection made thereto, followed by a statement of facts as to what the witness would state in response to the question, a ruling upon the objection and an exception. That the record in this case shows that the court sustained appellee's objection, and after the objection was sustained appellant then made his offer to prove. The rule contended for by appellee seems to find some support in the cases cited. See *Farmers Mutual Fire Insurance Co.* v. *Yetter* (1902), 30 Ind. App. 187-192, 65 N. E. 762; *Fleener* v. *Johnson* (1906), 38 Ind. App. 334-338, 77 N. E. 366. The record in this case does show what evidence was sought to be elicited from the witness, and we are of the opinion that it was not error to exclude it.

We recognize the rule of law stated by appellant and had the offered testimony been to the effect that appellee did or did not do what he should have done under the circumstances to minimize his injury, we would have a case supported by the authorities cited by appellant. The offered evidence does not attempt to show that appellee did not follow the instructions of his physician. In fact there is no evidence that appellee's physician ever gave appellee any orders or directions concerning his diet or anything else. The offered testimony, if it tends to prove anything, goes to the failure of some member of appellee's family to prepare and give to appellee certain kind of food. There is nothing in the record to show that appellee knew anything about the doctors' orders as to food or that the family was in charge of the care of appellee at the time the order was given. The evidence shows that appellee was taken immediately to the hospital after the injury and remained there several days before being taken to his home. The record does not show who was nursing appellee after that, whether he was in charge of a nurse or the members of his own family. Appellee was a boy fourteen years of age confined to his bed with a broken leg and could only be required to do what was reasonable to expect of him under all the facts and circumstances. He could not be held responsible for the failure of some member of his family to follow some instruction with reference to his diet prescribed by the doctor in charge of which he had no knowledge or means of complying therewith even had he known of it. We have examined all the cases cited by appellant and in each of the cases, it will be noted that the plaintiff himself was charged with some dereliction and not the acts of someone else. See *Chicago & E. I. R. R. Co.* v. *Mitchell* (1914), 56 Ind. App. 354, 105 N. E. 396; *Indiana Pipe Line Co.* v. *Christensen* (1924), 195 Ind. 106, 143 N. E. 396; *City of*

*Goshen* v. *England* (1889), 119 Ind. 368, 21 N. E. 977; *Citizens Street R. R. Co.* v. *Hobbs* (1896), 15 Ind. App. 610, 43 N. E. 479, 44 N. E. 377. The rejected testimony did not come within the rule stated in the above cases. It did not tend to show that appellee's present condition was due in whole or in part to any independent intervening cause for which appellee was in any manner responsible, and we find no reversible error in the exclusion of the offered testimony, regardless of whether the offer to prove was timely made.

The next question presented by appellant relates to instructions Nos. 11, 12, 14, and 16. In each of these instructions the court instructed the jury on the law of the road and then told the jury the rights of each party provided they found certain facts from the evidence. One of the facts mentioned by the court was, that if they found that appellee was riding his bicycle north on St. Joseph street, etc. Appellant's objection to these instructions is that there is no evidence in the record whatever that appellee was riding north on St. Joseph street, and therefore these instructions were predicated upon facts of which there was no evidence.

We think appellants are in error in this statement that there was no evidence in the record that appellee was at any time riding in a northwardly direction on St. Joseph street. We call attention to appellee's exhibit No. 15, found on p. 184 of the transcript, and the testimony given by appellee on p. 182 of the transcript. Appellee's exhibit No. 15 is a plat of the intersection of St. Joseph street and West Illinois street together with the location of various buildings at and near the intersection. This exhibit was drawn by appellee himself and on it he has traced the course he and his companion took just before and at the time of the accident. It shows the path traveled by each of them while on West Illinois street, the turn north, the location of ap-

pellants' car at the time of the collision and the route it traveled just before the collision. It has marked on it the spot where the collision between the bicycle on which he was riding and appellants' car occurred. The point marked on this exhibit shows that the accident occurred north of the north curb of West Illinois street and on St. Joseph street and that the direction which appellee was traveling was in a northwardly direction. Appellee's testimony, found on pp. 181 and 182, explains exhibit No. 15. So it is clear that appellants' objection to these instructions is without merit.

Appellant makes a further objection to instruction No. 16, given at the request of appellee. This instruction is as follows:

"A person who is operating a motor vehicle or bicycle along a highway on his right-hand side of such highway has a right to assume that a person in charge of another vehicle approaching in the opposite direction will observe the law and exercise due care to avoid an accident or collision, even though the latter vehicle is on the wrong side of the highway. He may assume that a vehicle approaching on the wrong side of the road will turn to his own right side of the road in time to avoid a collision. And if he uses reasonable care to avoid an impending collision after he sees, or should see, that the approaching vehicle will not change its course, he is not chargeable with contributory negligence or with negligence that contributes to the collision."

Appellants object to this instruction for the reason that this instruction, as they interpret it, tells the jury that, a traveler approaching a vehicle from the opposite direction, on the wrong side of the road, may assume that it will be turned to its right side of the road in time to avoid a collision. In other words, appellant says, it tells the jury that, irrespective of what one may see, he may assume the opposite.

We do not think this instruction is subject to the construction given it by appellant. Under the facts in this case, appellee, as he turned north on St. Joseph street and saw appellant Ewing driving his car south on said street on the east of the center of the street, had the right to assume that he would not continue in the same direction and thereby run into him, but would on the other hand see appellee approaching from the south and would turn his car to the west or the proper side of the street. Appellant cites and relies on the rule laid down in *Elgin Dairy Co.* v. *Shepherd* (1915), 183 Ind. 466, 108 N. E. 234, 109 N. E. 353. We have examined this case and find nothing in conflict with the above instruction. We do not think the trial court erred in giving the above instruction.

After the jury was instructed and retired to deliberate on a verdict and after they had been out more than 15 hours and after the court was satisfied that a unamimous verdict could not be reached, he recalled the jury and gave to them the following instruction on his own motion.

"The Court now instructs the jury, after you have reported to the Court that there is no probability of all the members of the jury agreeing upon a verdict, that when five-sixths or more of the jury have agreed upon a verdict that you may then render your verdict accordingly. The verdict so determined by the five-sixths or more of the jury must then be reduced to writing, signed by the foreman, and returned into court. The Court further instructs that by the meaning of the five-sixths of the jury in this cause means that if ten or more of the jury have agreed upon a verdict they may do so as herein indicated."

This instruction was given in pursuance to the authority of §594, Burns Supp. 1929, §2-2018, Burns 1933, §351, Baldwin's 1934, Acts 1929, p. 24. After this instruction was given the jury retired and returned a

verdict, ten of the jurors voting for the verdict and two voting against it. Judgment was rendered on this verdict. Appellant objected to the giving of this instruction and excepted thereto. Appellants attack the constitutionality of this statute. This question was decided by this court in the cases of *W. T. Rawleigh Co.* v. *Snider et al.* (1935), 207 Ind. 686, 194 N. E. 356, and *Schembri* v. *Shearer* (1935), 208 Ind. 97, 194 N. E. 615, and upon authority of those cases we hold that the above statute is unconstitutional and void, being in conflict with §20, Article 1 of the Constitution of Indiana, and that the court committed reversible error in the giving of the above instruction. For this reason the judgment is reversed with instructions to the trial court to sustain appellants' motion for a new trial and for further proceedings not inconsistent with this opinion.