Catherine LAKE, Cynthia Lake, by her father and next friend, Leyln Lake, Plaintiffs-Appellants,

v.

CHICAGO–INDIANA FREIGHT LINES, INC., Defendant-Appellee.

No. 12272.

United States Court of Appeals
Seventh Circuit.

July 2, 1958.

**626**

William S. Spangler, Gary, Ind., for appellant Spangler, Jennings & Spangler, Gary, Ind., of counsel.

Fred M. Stults, Jr., and Dale E. Custer, Gary, Ind., for defendant-appellee. Stults, Gibson, Custer & Draper, Gary, Ind., of counsel.

Before DUFFY, Chief Judge, and FINNEGAN and HASTINGS, Circuit Judges.

HASTINGS, Circuit Judge.

Plaintiffs brought a diversity suit in the district court to recover damages for personal injuries sustained in an automobile accident alleged to have been caused by the negligence of defendants. The plaintiffs were Catherine Lake, and Cynthia and Michael Lake, by their father and next friend, Leyln Lake. Catherine Lake is the wife and Cynthia and Michael are the infant children of Leyln Lake. Leyln Lake was the owner and driver of a Studebaker automobile in which plaintiffs were riding at the time of the accident in question. The defendants were Chicago-Indiana Freight Lines, Inc., lessee of a tractor-trailer motor vehicle truck unit (owned and driven by William E. Adamson), and Joseph and Josephine Karafiat. Joseph Karafiat was the owner of and passenger in a Plymouth automobile driven by his wife Josephine. The Plymouth and truck were involved in separate collisions with the Studebaker.

Immediately prior to the commencement of the trial, the defendants Joseph and Josephine Karafiat (and their insurance carrier) agreed to pay plaintiffs $6,000 in consideration for a partial release and covenant not to sue, and plaintiffs accordingly dismissed their action as to them with prejudice. The action continued against Chicago-Indiana Freight Lines, Inc., and was tried to a jury which returned a verdict for Catherine and Cynthia Lake and assessed damages at $1000 and $3000, respectively. The jury found for the defendant as to plaintiff Michael Lake, and the trial court entered judgment on that verdict. Thereafter, defendant filed its motion for judgment notwithstanding the verdict which motion was sustained by the trial court and judgment was entered thereon for defendant, from which judgment Catherine Lake and Cynthia Lake, by her father and next friend, now appeal, claiming error in the granting of such motion.

█ The ultimate contested issue on this appeal is whether there is any substantial evidence, considered in the light most favorable to plaintiffs, from which it can be reasonably inferred that defendant was actionably negligent in the operation of its truck. We have read the entire record in this case and the following is a summary of the pertinent facts bearing on this issue.

The accident happened about noon of April 24, 1954, on U. S. Highway No. 41, south of and near a bridge over the Kankakee River in Newton County, Indiana, near the town of Schneider. At the scene of the collisions, Road #41 was a concrete pavement with blacktop surface, about 24 feet in width, with a level grass covered shoulder on each side approximately 3 or 4 feet wide. At the outside edge of each shoulder was a line of wood posts connected by two heavy cables, and beyond the posts on each side a ditch filled with water. The road was straight and level. The weather was bright and clear and the pavement was

dry. The highway was marked with a center line and had one lane for northbound and one lane for southbound traffic. Lake was driving his Studebaker north on the highway in the east traffic lane at a speed of 60 to 65 miles per hour. Josephine Karafiat was driving the Karafiat's Plymouth south 25 to 30 miles per hour in the west traffic lane and was preparing to make a left turn off the highway about "two blocks" from where the first collision occurred. Adamson, the truck driver, was transporting a cargo of pickles and dog food, and was traveling south about 300 to 500 feet behind the Karafiat car at the rate of 30 to 35 miles per hour in the west traffic lane. His truck was a tractor-trailer unit with the cab over the engine, both tractor and trailer being equipped with straight air brakes. The outfit had a gross weight of 33,000 to 34,000 pounds. He had been driving trucks for eighteen years and this type of equipment for the past five years, and he had been making lease hauls for defendant from two to ten times a month for the past year or longer. All three vehicles were shown to have been in good mechanical condition, including their brakes. A pickup truck driven by a Boy Scout leader and carrying three Scouts followed defendant's truck south on Road #41 from Schneider at a distance of about 300 feet and at about the same rate of speed.

As Lake drove his Studebaker north he approached the Karafiat Plymouth, each car traveling in its own proper traffic lane. When the Karafiat car was about 20 to 30 feet in front of Lake's car it swerved sharply to its left into the east lane toward the Studebaker. When Lake saw this he turned his car to the right and "stepped on the brakes." The left front end of the Plymouth struck the left rear end of the Studebaker throwing the Lake car out of control. Lake kept his foot on the brake and tried to regain control of his car while it swerved across the center line of the highway into the southbound traffic lane, then back to the east side of the road, and, finally, across to the west side of the pavement again in

front of defendant's truck. As Lake attempted to drive back to the east side of the pavement the left side of his Studebaker collided with the left front end of the defendant's truck. The impact threw the Studebaker around again to the east side of the road, the front end off the pavement facing in a northeasterly direction, and it came to a stop a short distance from the point of impact. The truck continued down the pavement for a short distance, the tractor going through the guardrails on the east side, down the embankment and into the water-filled ditch, coming to a stop upside down in the water with the driver Adamson in the cab beneath the surface of the water, and the trailer turning over on its side across the pavement extending out over and beyond the east embankment. The Karafiat car went off the pavement on the west side following the first impact coming to rest facing south on top the west guardrail.

Lake testified that after the first collision his speed decreased "considerably due both to the braking action and to the swerving action of the car as it continued on down the road", and that at the time of the second collision the front end of his car was in the northbound traffic lane and the rear end in the truck's side of the road. He said that after his impact with the Karafiat car the defendant's truck proceeded south and at all times was in its southbound traffic lane and that he did not notice the truck reduce its speed although he had no opinion as to the speed of the truck at any time. He stated that the left rear tire on his car blew out at the time of or after the first collision.

Adamson testified that when the Studebaker and Plymouth collided (he was not aware at the time of the accident that there had been an actual collision between the two) he saw "something out of the ordinary happen up there", and that he saw the Studebaker coming "north for a short ways, and then he [the driver of the Studebaker] went on the west side of the road, over like it was going to go all of the way off the west side of the road, down to about 30 or 40 feet,

and he made a sharp right, came back, like he was coming away from the post, and as he came out he came into my truck, as he came out from that angle from the left side of the road." Adamson testified further that when he first saw the Studebaker come at him over on his side of the road (about 100 feet away) he took his foot off the accelerator, tried to determine what Lake's car was going to do, and that when it was 30 to 40 feet away he put on his brakes, cut sharply to the right and drove partly off the pavement to his right as they collided. He stated that Lake was going around 50 to 60 miles an hour and that he (Adamson) had slowed down to 15 to 20 miles an hour when they hit. After being submerged in the water, he crawled out of his cab and returned to the accident scene.

The Boy Scout leader and the three Scouts in the pickup truck following defendant's truck verified Adamson's speed. They testified that they saw the truck's brake lights flash on and off for an instant, and then saw the truck cut to its right off the pavement and then swing back across the road to the left and into the ditch. After rendering first aid, they called the State Police. A State Policeman was at the scene in about ten minutes and in making his investigation, he found skid marks of the truck about 10 feet north of the point of the second impact and continuing in its path off the road to the right.

It should be noted that at the scene of the accident, while the injured were being attended, the driver of the Studebaker, Leyln Lake, was heard to make several statements about the accident. Lloyd Wiborg, one of the Boy Scouts, testified that he heard Lake say it wasn't the truck driver's fault and that the truck driver was trying to avoid the accident. Harold Feller, Jr., the Boy Scout Leader, testified that he heard Lake say, "[T]he truck driver tried to avoid hitting me; it was something that couldn't be helped." Michael Rasheta, Jr., the Indiana State Police Officer, testified that he talked to

Lake at the scene of the accident, that Lake was excited, suffering from shock and walking up and down the road; and that he tried to calm him down and talk to him. Rasheta testified that in answer to his question concerning how the accident happened Lake told him, "[T]hat he had been involved in a prior collision with the Karafiat car, and [he] stated to me that he was going down the road completely out of control, and he said 'That poor truck driver didn't have a chance.' He said, 'He tried to miss me, but he just didn't have a chance.' He said, 'I had to hit him; I had no way of getting away from him.'" Lake did not deny making any of these statements.

In their complaint, plaintiffs charged defendant with various acts of negligence in not avoiding the second collision. Defendant was charged with failing to reduce the speed of its truck after the first impact; failing to restrict its speed; driving at excessive speed; failing to stop; failing to give a signal; failing to keep a proper lookout; failing to control its truck; and failing to have proper brakes. We do not believe that, under the record in this case, plaintiffs have sustained their burden of proof as to any one of these allegations of negligence.

We have here a situation in which defendant's truck was traveling at a reasonable rate of speed in its own proper lane of traffic. While so doing a first collision occurred through no fault of defendant some 300 to 500 feet down the road. Under the evidence, it was demonstrated that at the speed plaintiff's car and defendant's truck were traveling the two vehicles were approaching each other at the rate of 93 to 111 feet per second. With the time defendant's driver had in which to react to this emergency situation, finding himself hemmed in with guardrails and water-filled ditches on each side, with plaintiff's car swerving toward him at a high rate of speed first on one side and then on the other side of the pavement, and being, himself, aware of the probable disastrous consequences which could result

from sudden braking or turning while pulling a heavy load, it goes beyond all reason to say that any inferences of actionable negligence on the part of the truck driver could reasonably be drawn from the facts in this case taken in the light most favorable to the plaintiff. Under these circumstances we can say as a matter of law that defendant was not guilty of negligence as charged in the complaint. Gamble v. Lewis, 1949, 227 Ind. 455, 461, 85 N.E.2d 629.

In the case of Feinsinger v. Bard, 7 Cir., 1952, 195 F.2d 45, we held the evidence was insufficient to support a finding of negligence on the part of a driver, who while operating in his own proper lane, at a speed of 35 to 40 miles per hour, under weather conditions (ice and snow) such that he could have stopped within 500 feet, and being confronted with another car approaching in his lane of traffic at a higher speed at a distance of 700 feet, continued down his own side of the road with a head-on collision resulting. The opinion in that case by Chief Judge Major points out that it took defendant two seconds to determine the location of the oncoming car and that there was an inference that five seconds remained for the defendant to chart his course. The court said further:

"It is argued that during that time he could have applied his brakes or he could have turned either to the left or to the right. As to whether the collision could have been avoided by following any of such suggestions is purely a matter of guess and speculation. If he had suddenly applied his brakes on the ice covered highway, he likely would have met with disaster; in any event, he could not have stopped in time to avoid a collision. If he had turned to the left and the driver of

the other car had suddenly decided to turn back onto his own side of the highway, the collision would not have been avoided. In that event, [the defendant] would probably have been charged with negligence for being on the wrong side of the road * * *. *It must not be overlooked that [defendant] was called upon to act almost instantaneously, without opportunity to weigh the advantage of one course over another.*" (Our emphasis.) id., 195 F.2d at pages 51-52.

To the same effect are two cases, Havens v. Havens, 1954, 266 Wis. 282, 63 N.W.2d 86, and Henderson v. Henderson, 1954, 239 N.C. 487, 80 S.E.2d 383, cited by the district court in its memorandum in support of its holding that defendant's driver in this case was confronted with an emergency situation without sufficient time to deliberate and determine the best course for him to take. As the district court pointed out, what hindsight may now indicate as the right action was not necessarily what a reasonably careful and prudent driver would do in an emergency. In appraising the emergency situation with which he was confronted in the instant case, defendant's truck driver had a right to assume that the Lake car approaching him on the wrong side of the road would return to its own right side. Feinsinger v. Bard, supra; Lewis v. Mackley, 1951, 122 Ind.App. 247, 254, 99 N.E.2d 442, 445; Ewing v. Duncan, 1935, 209 Ind. 33, 40, 197 N.E. 901, 904.

We hold, therefore, that the district court did not err in sustaining defendant's motion for judgment notwithstanding the verdict, and the judgment below is

Affirmed.