# WABASH RAILWAY COMPANY *v.* TIPPECANOE LOAN AND TRUST COMPANY, ADMINISTRATOR.

[No. 22,083.   Filed April 5, 1912.   Rehearing denied June 6, 1912.]

1. RAILROADS.—*Crossing Accident.—Ordinary Care.—Duty of Pedestrian.*—The fact that a railroad company backed its engine across a street at an unlawful rate of speed and without giving warning or signal of its approach, that none of the employes on the engine were in a position to see the decedent before he was injured, and that the crossing watchman employed by the company was incompetent and failed to warn decedent of the approaching train, did not excuse the decedent from the duty of exercising ordinary care to avoid the accident. p. 120.

2. RAILROADS.—*Crossings.—Degree of Care Required of Traveler.*—The degree of care enjoined on one approaching a railroad crossing is in proportion to the danger to be avoided under the particular circumstances. p. 120.

3. RAILROADS.—*Crossing Accident.—Failure to Observe Train.—Negligence.*—Although, by reason of the circumstances surrounding a crossing accident and the negligence of the defendant, decedent may not have been in fault for failing to hear an approaching engine, he was guilty of negligence in failing to observe its approach where the jury found that after passing an embankment fifteen feet south of the track there was nothing, except a telegraph pole, to prevent him from seeing the approaching engine. p. 120.

4. RAILROADS.—*Crossing Accident.—Negligence.—Contributory Negligence.—Proximate Cause of Injury.*—Where defendant railroad company backed its engine toward a street crossing at an unlawful rate of speed and without giving warning or signal of its approach to the crossing, and the plaintiff's decedent could have

seen the engine approaching and could have escaped injury had he exercised ordinary care, the proximate cause of the injury was the negligence of the defendant operating concurrently and simultaneously with that of the decedent. p. 121.

5. RAILROADS.—*Crossing Accident.—Last Clear Chance.*—Where one injured in a crossing accident had the power, down to the last instant, to avoid the injury, the doctrine of last clear chance does not apply. p. 121.

6. TRIAL.—*Verdict.—Special Findings.—Conflict.*—Where the general verdict and the special findings of the jury are in irreconcilable conflict, the general verdict cannot stand. p. 122.

From Superior Court of Tippecanoe County; *H. H. Vinton,* Judge.

Action by the Tippecanoe Loan and Trust Company, as administrator of the estate of Patrick McLaughlin, deceased, against the Wabash Railway Company. From a judgment for plaintiff, the defendant appeals. (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.) *Reversed.*

*Edwin P. Hammond, Dan W. Simms* and *William V. Stuart,* for appellant.

*Wilson & Quinn* and *Charles E. Thompson,* for appellee.

MORRIS, C. J.—Appellee sued appellant for damages for alleged personal injuries to appellee's decedent, resulting in his death.

Answer of general denial. Trial by jury; verdict and judgment for appellee. Answers to submitted interrogatories were returned with the general verdict. Appellant's motion for judgment on answers to interrogatories was overruled, as was also its motion for a new trial. The overruling of each of these motions is presented here for review.

The complaint, among other things, alleges that at the time of the accident complained of, appellant owned and operated a steam railroad, with double tracks, through the city of Lafayette; that Fourth street ran north and south through the city, and was crossed by appellant's tracks running in a diagonal direction from the southwest to the north-

MAY TERM, 1912. 115

Wabash R. Co. *v.* Tippecanoe, etc., Trust Co.—178 Ind. 113.

east; that on the west side of the street there was an embankment, extending several hundred feet from the railway crossing, which so obstructed the view of appellant's tracks that pedestrians on the street could not see the same until they approached within a few feet of the track; that near this crossing was a viaduct, under the surface of Fourth street, through which was located the tracks of the Monon railway, which was then in operation.

It was also alleged that a city ordinance of Lafayette—a copy of which was filed with the complaint—required those in charge of a locomotive to keep some discreet person on the lookout, in a position where he could see persons on the track in front of the locomotive or cars, with power to stop the same at a moment's warning; and that the same ordinance prohibited locomotive or train speed in the city limits in excess of six miles per hour.

It is also alleged that, previous to the accident, defendant had maintained a watchman at the crossing, which fact decedent knew, and relied on him to give him warning of danger, if any, in crossing defendant's tracks; that the watchman employed was almost deaf, and was incompetent to discharge the duties of watchman, all of which defendant knew before the accident. The complaint further avers that on the afternoon of February 21, 1906, decedent was walking north, slowly and carefully, on the sidewalk, on the west side of Fourth street, approaching the crossing; that by reason of said embankment the sound of trains approaching the crossing from the southwest was deadened, and decedent was unable to see or hear any approaching train, because of the embankment; that as decedent approached the crossing, a locomotive, to which a long freight-train was attached, was passing on the Monon railway, through the viaduct, and said locomotive was puffing loudly and emitting large volumes of smoke, which passed to and settled down on the point of intersection of Fourth street with defendant's tracks, and the noise of the moving Monon freight-train,

and said smoke, rendered it still more difficult for a pedestrian to hear or see the approach of a train from the southwest on defendant's railway.

It is further alleged that just prior to the accident defendant was backing a switch engine from the southwest along defendant's south track, in a northeasterly direction towards the crossing, at a negligent speed of ten miles per hour; that the engineer on the engine was negligently in such position that he could not and did not see any person on the track, or near thereto, as the engine approached the crossing, and there was no one placed on the engine in a position to see persons or objects on or near the tracks at the crossing; that as the switch engine approached, the switchman was not at the crossing, and negligently failed to appear there until after the accident; that defendant negligently failed to ring the bell or sound the whistle on the engine before the accident.

It is further averred that decedent was possessed of good sight and hearing, and approached the crossing in a slow walk, and as he stepped onto the south track of defendant, for the purpose of crossing the railroad, he was struck by the switch engine, and sustained injuries which caused his death.

It is also averred that immediately prior to the accident decedent's attention was distracted by the smoke and noise from the Monon freight-train passing through the viaduct.

The jury's answer to interrogatories submitted disclose the following facts: Decedent, while walking north on the sidewalk on the west side of Fourth street was struck by the tender of appellant's switch engine and killed. The engine was backing across the street, drawing a box-car, and running northeast at a speed of eight miles per hour. There were four of appellant's employes on the engine. No one of them saw, or was in a position so he could see, decedent before the accident, nor did any employe of appellant see him until after he was injured. No warning was given decedent of the engine's approach, by ringing its bell or sound-

ing its whistle. The tracks crossed the street at an angle of forty degrees and fifty minutes east of north and west of south. Appellant had in its employ, at the crossing where decedent was injured, at and before the accident, a watchman named Haggerty, who gave no warning to decedent of the approach of the engine. The watchman was afflicted with deafness, and by reason of old age and infirmities was incompetent to discharge the duties of watchman; but during the time that Haggerty occupied the position of watchman, decedent was aware of the facts of his partial deafness, of his age, and of his bodily and mental infirmities, and of his incompetency properly to discharge his duties. The city ordinance, a copy of which was set out in the complaint, was in force at the time of the accident. There was also at the time, in effect, another city ordinance, which prohibited the sounding of a locomotive whistle in the city limits, unless to give thereby an alarm of fire. The jury found that the above two city ordinances were the only ones introduced in evidence.

Deceased was sixty-nine years of age, in full possession of his senses of sight and hearing, was in good health, and possessed of physical vigor and of ordinary intelligence. At the time of the accident, and for several years prior thereto, he lived a few hundred feet southeast of the crossing, and had frequently gone over it, and was familiar with it and all its surroundings. He was struck by the tender of the engine immediately on his stepping on the south track of the railroad.

An embankment between the tracks and sidewalk, south and west of Fourth street, and the noise of a freight-train on the Monon railway, deadened and drowned the noise of appellant's engine, tender and car as they approached Fourth street.

There was a running-board on the east end of the tender. Had there been a lookout on this board, he could have seen decedent in time to have warned him of the approaching

engine, and thus have prevented the accident. The engine was not under such control that it could have been stopped at a moment's warning.

From the time decedent arrived at a point fifteen feet south of the south rail of the track until he was injured, there was nothing to prevent him from seeing the approaching engine on appellant's track, had he carefully looked, except a telegraph pole.

The following interrogatories, submitted at appellee's request, were answered as follows:

"17. Was there on the 21st day of February, 1906, an embankment of earth immediately west of the west sidewalk of Fourth street, and south of the south track of the defendant company's track, of such height that the same would conceal a car and engine from one approaching on foot towards the north and at a point within eleven feet of the south rail of the south track of defendant company? A. No. 18. If you answer the last above question No, state how many feet from the south rail of the south track of the defendant company on the west sidewalk coming from the south, could a foot passenger see clearly the south track of the defendant company to the south and west? A. Fourteen feet. 19. Was part of the embankment west of the west sidewalk of south Fourth street and south of defendant company's track an obstruction to the view of defendant company's double track to the south and west? A. Yes." "53. Was Patrick McLaughlin misled and deceived by the failure on the part of the employes of defendant company in charge of the engine and cut of cars that struck him, to give him timely warning of the approach of said engine to said crossing? A. Yes." "28. Was any of the employes of the defendant company in a position to see persons or things on the railroad track ahead of the tender and engine, as it backed over the west sidewalk of South Fourth street at the time it struck and killed Patrick McLaughlin? A. No." "40. Was Patrick McLaughlin's attention attracted to the

east, just before he stepped upon the track of the defendant company where he met his death, by a little boy passing him going north, coasting down the sidewalk in a child's express wagon? A. Do not know." "43. Did the express wagon coming down the sidewalk over the cement make a noise as it came behind and passed to the north of the decedent, Patrick McLaughlin, just before he entered upon the south track of the defendant company where he was killed? A. Yes."

The jury answered as follows, certain interrogatories submitted at appellant's request: "29. When said McLaughlin at said time arrived at a point on said sidewalk fifteen feet south of the south rail of said southerly track and thence all the way until he reached said track, could he, by carefully looking, in the direction from which said train came, have seen the approach of said train. A. Yes." "37. Did the smoke from an engine of a train passing along about the time of the accident, on the Chicago, Indianapolis and Louisville Railway, blow over between said McLaughlin and the train which struck him, so as to prevent him from seeing the approach of said train, had he carefully looked? A. No. 38. At said place did the railroad mentioned in the last preceding question, run parallel with the Wabash railroad, and about one hundred and one feet north of the north track of said defendant's railroad? A. Yes. 39. Did said accident occur in daylight at about 4:05 p. m.? A. Yes. 40. If an employe of the defendant had been riding on the foot board at the easterly end of said tender could he have been seen by said Patrick McLaughlin as he approached said crossing, if said McLaughlin had been carefully looking in that direction, as soon and as readily as said employe if standing on said foot board could have seen Mr. McLaughlin? A. Yes."

"42. From said Fourth street southwesterly, for the distance of 300 feet or more, did said defendant's railroad, at said time, run on a straight line, and thence going westerly, make a slight curve to the right? A. Yes."

Appellant contends that the facts specially found by the jury, considered with reference to the material allegations of the complaint, disclose an irreconcilable conflict with the general verdict, because they show that decedent, in failing to see the approach of the engine was guilty of negligence which continued until the injury, and which, concurrently with appellant's negligence, proximately caused it. On the other hand, appellee contends that the facts here warrant the application of the rule of "last clear chance," and, so applied, appellee's right of recovery is not barred by decedent's failure to observe the approach of the engine.

The facts disclosed, including the violation of the city ordinance, did not excuse decedent from the duty of exercising ordinary care. Even with a locomotive running at a speed of six miles per hour, and with a discreet person thereon as lookout, and with the bell ringing, the danger of injury to pedestrians crossing the railway track was not wholly eliminated. A locomotive, running at a speed of six miles per hour, cannot be stopped instantly, nor in so short a space of time as a pedestrian can stop, and this fact must be apparent to a person of ordinary intelligence. The degree of care enjoined on decedent was in proportion to the danger, under the particular circumstances, to be avoided.

It may be conceded that decedent was not in fault for failing to hear the approaching engine; but we think the facts disclosed show he was negligent in failing to observe it. While it is alleged in the complaint that his vision of the approaching engine was obscured by the smoke from the locomotive on the Monon railway, the jury finds specially that after passing from behind the embankment, fifteen feet south of the track, there was nothing except a telegraph pole to prevent him from seeing the approaching train. The existence of the latter obstruction could not excuse a failure to see the approaching engine.

This negligence continued until the very instant of the

injury, for decedent was struck as soon as he stepped on the track. If he had seen the engine but an instant before, he could have avoided the accident.

Had defendant been free of negligence, the accident might not have occurred; and had decedent exercised ordinary care, it might have been avoided. Until the very instant of collision, decedent, had he exercised ordinary care, could have escaped injury.

4. It thus appears that the proximate cause of the injury was the negligence of defendant operating concurrently and simultaneously with that of decedent; and that the negligence of neither terminated before the instant of the injury.

Such a state of facts bars the right of recovery, because of the contributory negligence of decedent. There is here no room for the application of the doctrine of last clear chance, for decedent had the power, down to the last instant, to avoid the injury.

5.

In *Evans* v. *Adams Express Co.* (1890), 122 Ind. 362, 23 N. E. 939, 7 L. R. A. 678, this court, by Mitchell, J., on page 367, used the following language: "Where the negligence of two persons is contemporaneous, and the fault of each operates directly to cause the injury, the rule deducible from the authorities is that the plaintiff cannot recover, if by the exercise of ordinary care on his part he might have avoided the injurious results of the defendant's negligence." See, also, *Chicago, etc., R. Co.* v. *Hedges* (1889), 118 Ind. 5, 20 N. E. 530; *Lake Shore, etc., R. Co.* v. *Brown* (1908), 41 Ind. App. 435, 84 N. E. 25, and cases cited; *Indianapolis St. R. Co.* v. *O'Donnell* (1905), 35 Ind. App. 312, 73 N. E. 163, 74 N. E. 253; *Hammers* v. *Colorado, etc., R. Co.* (1911), 128 La. 648, 55 South. 4, 34 L. R. A. (N. S.) 685, 64 Am. and Eng. R. Cas. 414; 3 Elliott, Railroads §1175; *Dyerson* v. *Union Pac. R. Co.* (1906), 74 Kan. 528, 87 Pac. 680, 7 L. R. A. (N. S.) 132 and note, 11 Ann. Cas. 207; *Himmelwright* v. *Baker* (1910), 82

Kan. 569, 109 Pac. 178; *Elliot* v. *New York, etc., R. Co.* (1910), 83 Conn. 320, 76 Atl. 298; *Bourrett* v. *Chicago, etc., R. Co.* (1909), 121 N. W. (Iowa) 380; 66 Cent. Law Journal 215; Shearman & Redfield, Negligence (5th ed.) §99; *Drown* v. *Northern, etc., Traction Co.* (1907), 76 Ohio St. 234, 81 N. E. 326, 10 L. R. A. (N. S.) 421, 118 Am. St. 844; *Rider* v. *Syracuse, etc., R. Co.* (1902), 171 N. Y. 139, 63 N. E. 836, 58 L. R. A. 125; *Gahagan* v. *Boston, etc., Railroad* (1900), 70 N. H. 441, 50 Atl. 146, 55 L. R. A. 426; *Green* v. *Los Angeles, etc., R. Co.* (1904), 143 Cal. 31, 76 Pac. 719, 101 Am. St. 68; *Burns* v. *Louisville, etc., R. Co.* (1902), 136 Ala. 522, 33 South. 891; *O'Brien* v. *McGlinchy* (1878), 68 Me. 552; *Franklin* v. *Engle* (1904), 34 Wash. 480, 76 Pac. 84.

6. There is an irreconcilable conflict between the special findings of the jury and its general verdict, and consequently the court erred in overruling appellant's motion for judgment in its favor, notwithstanding the jury's verdict.

Judgment reversed, with instructions to the lower court to render judgment for appellant on the answers to interrogatories.

Note.—Reported in 98 N. E. 64, and reported and annotated in 36 L. R. A. (N. S.) 1167. See, also, under (1) 33 Cyc. 981; (2) 33 Cyc. 982; (3) 33 Cyc. 1004; (4) 33 Cyc. 987, 1042; (5) 33 Cyc. 1049; (6) 38 Cyc. 1927. As to the applicability of the doctrine of last clear chance where danger not actually discovered, see 36 L. R. A. (N. S.) 957. As to the right of those in charge of a railroad train, approaching a crossing, to presume that persons about to cross will heed warning, see 20 Am. St. 452.