FLOYD BURGER AND LORRAINE BURGER *v.* NATIONAL BRANDS, INC., FEATHERLITE MANUFACTURING DIVISION.

[No. 3-774A126. Filed March 4, 1976.]

*Robert L. Thompson, Hoffman, Moppert, Solomon, Miller & Thompson,* of Fort Wayne, for appellant.

*William E. Borror, Hunt, Suedhoff, Borror, Eilbacher & Lee,* of Fort Wayne, for appellee.

GARRARD, J.—Floyd Burger, one of the plaintiffs, was injured when a stack of patio doors fell over upon him while he was attempting to unload them from the defendant National's truck. At the conclusion of the presentation of Burger's evidence, the trial court granted National's motion for judgment on the evidence. This appeal challenges that result. We find no reversible error.

Before reviewing the evidence, we must first consider National's assertion that no error has been preserved for appeal. The sole assignment of the motion to correct errors reads,

> "There was sufficient evidence to require the court to submit this cause to the jury and the Court, therefore, committed error of law in failing to do so and in granting defendant's motion for a directed verdict and judgment on the plaintiff's evidence."

Counsel asserts that by this assignment, the only error claimed is ". . . in granting defendant's motion. . . ." He then cites authority for the proposition that the harm, if any, occurred in the court's directing the jury to return a verdict for the defendant rather than in the preceding procedural step of sustaining the motion. The decisions in *Bartley* v. *Chicago, E.I. Ry. Co.* (1942), 220 Ind. 354, 41 N.E.2d 805 and *Smith* v. *Cleveland C.C. St. L. Ry. Co.* (1917), 67 Ind. App. 397, 117 N.E. 534, did so hold under former rules of appellate practice.

However, we note two changes in the law since those decisions.

Our rules of civil procedure have eliminated the "directed verdict" and substituted provisions for judgment on the evidence. Indiana Rules of Procedure, Trial Rule 50. Among the changes effected by the rule is the elimination of the prior practice of requiring the court to direct the jury to return a verdict. Instead, TR. 50 simply directs that, in an appropriate case, the court withdraw the

issues from the jury and enter judgment. Thus, when the court sustained the motion, it should have entered judgment. Directing the jury to return a verdict was superfluous.

Secondly, TR. 59(B), governing motions to correct errors, provides in part,

> "A motion to correct error shall state the issues upon which error is claimed, but the issues are not required to be stated under or in the language of the reasons allowed by these rules, by statute or by other law."

The Civil Code Study Commission comments to this provision indicate its position rather clearly:

> "In requiring the issues upon which error is based to be stated in the motion, this rule departs only in degree from prior Indiana practice which was aimed at informing the judge of the error relied upon. *** Although error couched merely in statutory language was not usually sufficient, a long line of indefensible cases have required the assignment of errors be specified under the named statutory ground and have held that a specification under one statutory ground which should be included under another is fatal. This absurd pitfall, *created to obstruct use of the motion and avoid decisions upon the merits* of a controversy upon appeal, *are intended to be overruled* by this subdivision. Probably the most absurd procedural trap . . . was . . . that such motion was made for the proper statutory ground *technically* and *specially* set forth. E.g., assignment that 'finding and judgment' . . . was contrary to law . . . improper under statute requiring assignment to be that 'verdict or decision' was improper. . . ." (Emphasis added)

Burger's motion to correct errors informed the judge that granting judgment on the evidence was the error relied upon. His accompanying memorandum expressly pointed out wherein he thought the evidence was sufficient. We believe that in adopting TR. 50 and TR. 59(B), our Supreme Court overruled the effect of *Bartley, supra,* and *Smith, supra,* as to the loss of appealable error based upon the technical defect of whether the "harm" was created by instructing the jury to return a

verdict, rather than by granting of the motion which required the instruction. We, therefore, so hold. The assignment of error was adequate.

Turning to the judgment granted, we note that both parties recognize that the trial court's action was proper only if there was a lack of any substantial evidence of probative value on one or more of the elements necessary to a recovery on the claim. *See, Jordanich* v. *Gerstbauer* (1972), 153 Ind. App. 416, 287 N.E.2d 784.

The evidence was essentially uncontradicted and when viewed most favorably toward Burger's claim, disclosed the following.

National's employee, Hicks, drove a truckload of patio doors to the Leo Distributors plant. The doors, many of which were three to four feet wide and approximately six feet eight inches high, were stacked in the truck in an upright position. The rows of doors extended across the truck. Each row was divided. One portion of the row was secured to the right side of the truck by a rope near the top of the doors and another rope near the bottom. The other portion of the row was secured to the left side of the truck in the same manner. Normally, when Hicks delivered a load of doors, he would personally move the doors to the tailgate of the truck and the customer's employees would then remove them. Occasionally, one of the customer's employees would assist Hicks in thus "tailgating" the doors that were farthest back.

Burger had worked at Leo for three or four months at the time of his injury and had helped unload doors on only one previous occasion. On that occasion, he had not worked inside the semitrailer. He had also stacked doors and windows in the warehouse and knew they should be leaned at an angle or they would fall over.

On the day in question, Hicks arrived at the Leo plant and went to the general manager. He was told that no one was then available to unload the truck but that they would get to it as soon as they could. Hicks returned to his truck,

opened the rear doors of the trailer and checked the doors stacked nearest the tailgate. He then entered the cab of his truck and leaned against the steering wheel and went to sleep. There he remained until after Burger was injured.

A short time after Hicks returned to his truck, the manager told Burger and a co-worker, Shrock, to unload the truck. Burger and Shrock went to the semi and began unloading the frames for the doors and then the doors themselves. The evidence is conflicting as to whether these two knew that Hicks was in the cab, but it is undisputed that they made no effort either to locate him or to secure his assistance. They sought no guidance or assistance from anyone. A short time later, the manager appeared to assist in removing the doors from the semi and loading them onto one of Leo's trucks. At this juncture, Burger and Shrock had unloaded about half of the doors in one row and had removed the retaining ropes from both the bottom and the top of the remainder. The doors they were in the process of unloading were thus standing upright without support. The manager testified that he told Burger and Shrock to pull the bottoms of the doors away from the side of the truck and rest them at an angle to achieve some stability, or there might be an accident. Shrock recalled this, and so did Burger, except that Burger did not recall the manager saying it was dangerous for the doors to be left upright and untied. When the manager told them to pull the bottoms away from their vertical position, Burger was standing in front of the doors. He then reached up to steady the tops and Shrock reached down and attempted to move the bottoms. When he did so, the doors fell toward Burger, striking him and pinning his head against the side of the truck. This resulted in the injuries complained of.

Although the question of contributory negligence is normally one of fact for the jury, it becomes one of law where but one reasonable conclusion or inference can be drawn from the evidence. *Devine* v. *Grace Const. & Supply Co.* (1962), 243 Ind. 98, 181 N.E.2d 862.

Here it was undisputed that Burger knew that such doors, if stacked vertically on end without support or restraint, were likely to tip and fall over. He was acquainted with the size and weight of the doors and must have known of the potential for injury if they fell on him. Nevertheless, without seeking help or advice, he proceeded, along with Shrock, to untie the doors at the top as well as the bottom and to stand in their direct path, should they fall, while Shrock pulled on the bottoms. The only reasonable conclusion from this course of conduct is that Burger, himself, was guilty of negligence which contributed to his injuries.

Burger, nevertheless, attempts to avoid this conclusion by two assertions. First, he urges that on the basis of our holding in *Rouch* v. *Bisig* (1970), 147 Ind. App. 142, 258 N.E.2d 883, there existed a question of Burger's knowledge and appreciation of the peril which required the question of contributory negligence to be submitted to the jury. Burger fails to recognize the distinguishing feature present in *Rouch*. In that case, the plaintiff was an injured boy. The appropriate standard to determine negligence was reasonable care of a youth of like age, intelligence and experience . The determination of the application of those factors to determine what constituted reasonable care presented a question for the jury.

Burger also argues that because he engaged in the unloading as a duty of his employment, it cannot be said that he voluntarily exposed himself to the danger. In this case, it is not necessary to review the authorities considering this proposition. The evidence and available inferences stand undisputed that not only did Burger voluntarily act as he did, but when his actions were observed by his employer, he was immediately warned of the danger of the doors falling.

We find no error.

Affirmed.

Staton, P.J. and Hoffman, J., concur.

NOTE.—Reported at 342 N.E.2d 870.