Millie GASICH, as Special Administratrix of the Estate of Mirko Gasich, Deceased, Plaintiff-Appellant,

v.

CHESAPEAKE & OHIO RAILROAD COMPANY, George A. Langer and Clarence E. Lighty, Defendants-Appellees.

No. 3–782A152.

Court of Appeals of Indiana, Third District.

Sept. 19, 1983.

Nick Katich, Addison, Stoner, Stiles & Katich, P.C., Merrillville, for plaintiff-appellant.

Leonard M. Holajter, Peter C. Bomberger, Highland, for defendants-appellees.

GARRARD, Judge.

This is an appeal from a judgment on the evidence entered in a wrongful death action.

On April 29, 1979 Mirko Gasich got into his pickup truck and drove from his home in Merrillville to a Gary hardware store. After making several purchases, he left, on his way home. At about the same time, Richard and Janet Johnson and their twenty-two month old daughter were out driving, exploring the area into which they had just moved. It was a cool, partly cloudy Sunday afternoon with occasional drizzles, but no fog or haze.

Hendricks Street is a north-south street running through an area of open country in Merrillville. It is bisected at two points by railroad tracks that run east and west.[1] As the Johnsons were proceeding south on Hendricks Street, Richard Johnson noticed a pickup truck in his rear view mirror. The truck, driven by Gasich, was also southbound and was just crossing the northernmost set of railroad tracks. Shortly after Richard Johnson noticed Gasich's truck, the Johnsons slowed down to inspect an old house located about three hundred yards before the second set of tracks. As they looked at the house, the Johnsons heard a train whistle and saw a railroad train approaching from the left. When the Johnsons saw the train, it was about four hundred and fifty yards to the left of the crossing. Neither Johnson had any difficulty seeing the train.[2]

---

1. Gasich had been along this stretch of Hendricks Street at least once before. His daughter testified that she had traveled over the same road, and both crossings, with her father the day before this accident occurred.

2. Janet Johnson observed the events leading to Gasich's death with less intensity than did her husband because their daughter had seen the train approaching and was quite excited. Mrs. Johnson was relatively preoccupied with her daughter during the moments preceding the collision.

At almost the same time the Johnsons heard the train whistle, Gasich passed their station wagon. Both initially assumed he would return to the right lane of the street and then stop before the crossing. It became increasingly apparent that this was not going to occur. Later, Richard Johnson estimated Gasich's speed at from 35 to 40 miles per hour. Neither Johnson saw Gasich's head turn to the right or left or saw his brake lights flash. He made no attempt to swerve to either side to avoid what soon became an inevitable collision. When that collision occurred at about 4:15 p.m. Gasich's truck was in the center of the road still in the process of returning to the right lane. The right front corner of the train collided with the left front corner of the truck, throwing the truck up into the air and to the right. Gasich was thrown out of the truck, against the train, and landed in a ditch. Richard Johnson, first-aid kit in hand, ran to assist Gasich, but found him dead.[3]

At the trial the train engineer, George A. Langer, testified that the train was traveling at about 40 miles per hour as it approached the crossing. Langer said that he had activated the train's whistle and bell at the whistle post, 1348 feet before the crossing. He gave the standard signals with the whistle. The bell was automatic, and sounded continuously from the whistle post until it was shut off after the accident.[4] The train's headlight was on. Langer saw Gasich before the latter passed the Johnson's station wagon. Because he assumed that Gasich would stop at the crossing, he did not become alarmed until the last minute. Langer applied the train's brakes at about the moment of impact. The train finally came to rest with the front of the lead engine about fifteen hundred feet beyond the crossing.[5]

Millie Gasich, Gasich's wife and special administratrix of his estate, brought a wrongful death action against the operator of the train, the Chesapeake & Ohio Railroad Company, and against its engineer, George A. Langer, and conductor, Clarence R. Lighty.[6] A jury trial began. At the close of Gasich's case in chief, the defendants moved for judgment on the evidence. The court granted the motion, finding that Mirko Gasich had been contributorily negligent as a matter of law.[7] Millie Gasich appeals.

3. Johnson then checked the road for skid marks, but found none.

4. Both Johnsons heard the original whistle that called the train to their attention. Both are uncertain as to what they heard afterward. Mrs. Johnson was distracted. n. 2, *supra*. Mr. Johnson had grown up near a train yard and was accustomed to ignoring train whistles.

5. The train was made up of three engines, twenty-five cars and a caboose. It weighed approximately 107 tons, and the railroad later estimated that it could have been stopped, with an emergency application of its brakes, in about 1620 feet.

The deposition of the conductor, Clarence Lighty, was read in part at trial. Lighty was riding in the caboose. Like the Johnsons, he has no clear recollection of hearing the whistle or the bell in the period preceding the collision. Like Richard Johnson, Lighty was accustomed to ignoring the whistle. Lighty did not believe the bell was audible in the caboose. But Lighty indicated that he believed Langer had always followed the prescribed signaling procedures in the past.

6. Hereinafter, the three defendants will be collectively referred to as "the railroad" except when discussing specific actions taken by Langer and Lighty.

7. The court granted the motion in the following words:

"Based on Indiana Code Section 9–4–1–106, which requires the vehicle shall stop within not more than 50 but not less than 10 feet, Subsection (d) when approaching train is plainly visible and is in hazardous proximity to that crossing, the Court is going to find as a matter of law that the decedent in this matter violated that statute, find negligence per se, further find that that negligence contributed, proximately contributed to the decedent's death. Therefore, the Court is going to grant the Motion for Directed Verdict. "Now, as a procedural matter, I believe it is the procedure in Indiana now that it is granted as a judgment on the evidence at the close of Plaintiff's case, but I do not have to have the jury sign a verdict.

Show it as entered as a judgment on the evidence at the close of Plaintiff's case or judgment entered for the Defendants against the Plaintiffs in this matter."

The court then entered the following judgment:

"Trial resumed. Plaintiff completed evidence and rests. At the close of Plaintiff's evidence,

The former Mrs. Gasich[8] raises three issues:

1. Was it error to find that Mirko Gasich was contributorily negligent as a matter of law?
2. Did the court err in not considering the doctrine of last clear chance?
3. Was it error to exclude a photograph of the pole from which a railroad crossing sign was missing?

## I.

Gasich's first argument is that Mirko Gasich was not contributorily negligent as a matter of law. Before we consider the merits of that argument, we must address the appropriate standard of review.

■■■ "Although the question of contributory negligence is normally one of fact for the jury, it becomes one of law where but one reasonable conclusion or inference can be drawn from the evidence." *Burger v. National Brands, Inc.* (1976), 168 Ind.App. 289, 342 N.E.2d 870, 873, citing *Devine v. Grace Construction & Supply Co.* (1962), 243 Ind. 98, 102, 181 N.E.2d 862. If the only reasonable conclusion to be drawn from the evidence is that the plaintiff was contributorily negligent, then he is guilty of contributory negligence as a matter of law. 243 Ind. at 102, 181 N.E.2d 862, quoting *New York Central Railroad Company v. Glad* (1962), 242 Ind. 450, 179 N.E.2d 571, 572. A plaintiff who is guilty of contributory negligence as a matter of law cannot recover on his claim, and it is the duty of the trial court to enter judgment on the evidence, under Trial Rule 50, in such a situation. 243 Ind. at 101, 181 N.E.2d 862.[9] In reviewing the judgment on the evidence which is before us, we must ascertain whether the only reasonable inference, or conclusion, to be drawn from the evidence is that Gasich was contributorily negligent.[10]

The trial court based its determination that Gasich was contributorily negligent upon IC 9–4–1–106(d),[11] which provides:

"Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty (50) feet but not less than ten (10) feet from the nearest track of such railroad and shall not proceed until he can do so safely, when:

*     *     *     *     *     *

(d) An approaching train is plainly visible and is in hazardous proximity to such crossing."

For the judgment to be correct, the only reasonable conclusion to be drawn from the evidence must be that Mirko Gasich failed to stop at the crossing when an approaching train was plainly visible.

■■■ Mrs. Gasich does not dispute that Mr. Gasich failed to stop at the crossing. What she disputes is the visibility of the

Defendant files motion for judgment on the evidence in the following words and figures, to-wit: (H.I.) Argument of counsel heard. The Court finds that Plaintiff's decedent was contributorily negligent as a matter of law. Defendant's Motion for Judgment on the evidence is granted. The Court orders judgment entered for defendant in this cause. Costs vs. Plaintiff.

/s/ Roger V. Bradford, Judge
Porter Superior Court"

**8.** The appellant remarried during the pendency of this action.

**9.** In *Devine* the court was reviewing a directed verdict, which was the procedural antecedent of judgment on the evidence under Trial Rule 50. 243 Ind. at 101, 181 N.E.2d 862; 342 N.E.2d at 871. Both the directed verdict and judgment on the evidence are devices for withdrawing issues from the jury when the evidence is insufficient to support a finding for the proponent of the issue. Trial Rule 50(A): *Engrer v. Ohio & M. Ry. Co.* (1895), 142 Ind. 618, 625, 42 N.E. 217. The *Devine* standard is, therefore, applicable in reviewing a judgment on the evidence. 342 N.E.2d at 873.

**10.** For a general discussion of the standard to be employed in reviewing a judgment on the evidence, *see McKeown v. Calusa* (1977), 172 Ind.App. 1, 359 N.E.2d 550, 553.

**11.** The railroad's motion for judgment on the evidence was based on two alternate grounds, that Gasich was contributorily negligent and that the railroad was not negligent. The trial court confined its judgment to the former ground. Mrs. Gasich argues both on appeal. Because we find the trial court's judgment to have been correct, we do not address the issue of the railroad's negligence.

train. She argues that the train was not plainly visible without an audible signal to alert a motorist of its presence. In support of this contention she asserts that the collective Johnsons saw the train only because a whistle called it to their attention. Her argument fails because it is based both upon a logical fallacy and upon a misinterpretation of IC 9–4–1–106. The logical fallacy is, simply, if a whistle was given sufficient to call the train to the Johnsons' attention, why was Gasich unaware of its approach? The fault must lie with Gasich, rather than with the train crew.

The more serious flaw in the argument is that it is based upon a misinterpretation of the statute. IC 9–4–1–106 provides:

"Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty (50) feet but not less than ten (10) feet from the nearest track of such railroad and shall not proceed until he can do so safely, when:

(a) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a train.

(b) A crossing gate is lowered or when a human flagman gives or continues to give a signal of the approach or passage of a train.

(c) A railroad train, as defined in this act, approaching within approximately one thousand five hundred (1,500) feet of a highway crossing emits a signal audible for such distance and such train, by reason of its speed or nearness to such crossing, is an immediate hazard.

(d) An approaching train is plainly visible and is in hazardous proximity to such crossing."

Gasich reads the provisions as conjunctive. She assumes that sub-sections (c) and (d) are to be read together, and from that concludes that "plainly visible" requires that an audible signal be given. She contends that Gasich had the right to assume that, absent such a signal, no train was approaching. This is incorrect. The subsections are disjunctive. It is not necessary that there have been an audible signal for a train to be "visible." *New York Central Railroad Co. v. Glad* (1962), 242 Ind. 450, 179 N.E.2d 571. It has long been recognized that "a railroad crossing is a known place of danger." *Chesapeake & Ohio Railway Co. v. Williams* (1943), 114 Ind.App. 160, 166, 51 N.E.2d 384.

"It is a requisite to the exercise of ordinary care by one about to go over a railroad grade crossing that he look both ways and listen attentively, and if by looking he could have seen, and if by listening he could have heard an approaching train in time to avoid collision, it is presumed, if such collision occurs, that he either did not look and listen or did not heed what he saw and heard, in either of which events he is guilty of contributory negligence."

*Baltimore & Ohio Southwestern Railway Co. v. Rosborough* (1907), 40 Ind.App. 14, 18, 80 N.E. 869. *See also Cleveland, etc. Railway Co. v. Van Laningham* (1912), 52 Ind. App. 156, 164, 97 N.E. 573, 576 (failure to look for approaching train is negligence as a matter of law).

All the evidence indicated that the train was clearly visible from the point at which Gasich passed the Johnson station wagon. There was evidence that he did not turn his head to either side, as would have been necessary if he had looked for a train approaching the crossing. There was evidence that he had been across the same area of Hendricks Street only the day before, so he was not unfamiliar with the road. The evidence showed that the crossing was marked with a standard crossbuck warning sign. There were no visual obstructions and no inclement weather impairing visibility. Evidence showed that the train had its headlight on as it approached the crossing. The only reasonable conclusion to be drawn from the evidence is that the train was clearly visible as it approached the crossing. Richard Johnson's testimony indicated that it was visible when it was still 450 feet from the crossing, and remained so. The uncontroverted evidence was that Mirko Gasich failed to stop at a

railroad crossing as required by IC 9–4–1–106(d). Violation of a statutory duty is negligence per se. *New York Central Railroad v. Glad* (1962), 242 Ind. 450, 457, 179 N.E.2d 571. Mirko Gasich was guilty of negligence per se in not stopping at the crossing. Because this negligence per se was a proximate cause of the collision resulting in his death, he was guilty of contributory negligence as a matter of law. 242 Ind. at 461, 179 N.E.2d 571. The trial court did not err in this regard.

## II.

Gasich next argues that the trial court erred in not considering the doctrine of last clear chance, as excusing any contributory negligence by Mirko Gasich. She argues that because engineer Langer actually saw Gasich approaching and should have realized that danger was imminent, Langer was under a "special duty" to avoid injury to Gasich. This special duty existed despite Gasich's contributory negligence in not discovering the approaching train and despite his ability to have avoided the collision. The special duty required Langer "to use every reasonable means to avoid the injury."

Gasich derives this special duty, which she characterizes as a "special last clear chance doctrine applicable to railroads," from two cases, *Indianapolis Traction and Terminal Co. v. Croly* (1911), 54 Ind.App. 566, 96 N.E. 973, and *Terre Haute Traction Co. v. Stevenson* (1919), 189 Ind.

100, 123 N.E. 785. In *Croly* the Appellate Court considered the doctrine of last clear chance at some length. 54 Ind.App. at 577–89, 96 N.E. 973. In discussing its application, the court enunciated a general last clear chance rule, a corollary to the rule, and an exception to the corollary. The general rule is that the plaintiff's contributory negligence is excused whenever the defendant had a later opportunity than the plaintiff to avert the calamity and negligently failed to take advantage of the opportunity. *Id.* at 580–81, 96 N.E. 973. The corollary is that for last clear chance to apply, the defendant's negligence must have intervened after, or have continued after, the plaintiff's negligence had ceased. *Id.* at 582, 96 N.E. 973. If the defendant's negligence merely concurred with the plaintiff's negligence, the doctrine does not apply. *Id.* The exception to this corollary occurs when the defendant had "actual knowledge" of the plaintiff's peril. *Id.* at 586–87, 96 N.E. 973. "Actual knowledge" means that in a situation analogous to the one presently before us, the defendant actually saw the plaintiff and realized or should have realized that he was oblivious to his imminent peril. This actual or imputed realization must occur while the defendant still has the opportunity to prevent injury. *Id.* at 586–87, 589, 96 N.E. 973. In the face of actual knowledge, a special duty arises, requiring the defendant to use every reasonable means to avoid injuring the plaintiff. *Id.* at 586–87, 96 N.E. 973.[12]

---

12. *Stevenson* applied this exception and discussed the special duty arising from knowledge of another's peril. 189 Ind. at 109, 123 N.E. 785. *Stevenson* made it clear that, absent such knowledge, one is only held to a general duty "to use due care for the protection ... of parties ... at crossings ... not known to be in danger, and contributory negligence is a defense when this general duty is violated." *Id.* at 106, 123 N.E. 785. *See also New York, Chicago & St. Louis Ry. Co. v. Leopold* (1920), 73 Ind.App. 309, 317, 127 N.E. 298.

Although not expressed as such, *Croly*'s last clear chance rules seem to be premised upon principles of proximate causation. The most common explanation for the existence of the doctrine is that "if the defendant has the last clear opportunity to avoid the harm, the plain-

tiff's negligence is not a 'proximate cause' of the result." W. Prosser, *Handbook of the Law of Torts* Section 66 (4th ed. 1971). In *Croly*'s general rule, the plaintiff can recover because the negligence of the defendant "intervenes between the accident and the more remote negligence of the plaintiff to become a superseding cause." 57 *Am.Jur.2d Negligence* Section 388. *See also Indianapolis Traction & Terminal Co. v. Kidd* (1906), 167 Ind. 402, 79 N.E. 347. When the negligence of the plaintiff and defendant concur to produce injury, proximate causation is less obvious. When it "appears that the proximate cause of the injury was the negligence of defendant operating concurrently and simultaneously with that of [plaintiff]," the plaintiff may not recover because he was as capable as the defendant of avoiding injury.

Gasich argues that the facts of the present case establish that the railroad, via engineer Langer, had such a special duty toward Mirko Gasich. She argues further that the railroad breached this duty, proximately causing the fatal collision and thereby excusing Mirko Gasich's contributory negligence. We disagree.

Indiana, of course, requires that the defendant have had actual knowledge of the plaintiff's peril. 115 Ind.App. at 219, n. 11, 57 N.E.2d 444, *supra.* The cases which have found that a special duty existed have inferred such knowledge from conduct by the plaintiff which indicated his ignorance of approaching danger. In *Croly* the plaintiff was an eleven year old girl struck by a street car. 54 Ind.App. at 592, 96 N.E. 973. There was conflicting evidence as to whether the street car's motorman saw the girl walking in such a way that indicated she did not see the approach of the car that struck her. *Id.* at 982–983. The evidence did .give rise to the reasonable ·inference that, from her pace and from the direction in which she was walking, the motorman should have known she did not see the approaching car.

In *Terre Haute Traction Co. v. Stevenson* (1919), 189 Ind. 100, 123 N.E. 785, a street car and a buggy collided. The street car's motorman observed the buggy approaching on a parallel course, observed the buggy's top up and rear curtain down and observed that the drive made no effort to slow the horse as the buggy approached the crossing. *Id.* at 104–05, 110–11, 123 N.E. 185. From these observations the court inferred actual knowledge sufficient to establish the special duty described in *Croly.* A more recent case, *Elgin, Joliet & Eastern Railway Company v. Hood* (1975), 166 Ind.App. 336, 336 N.E.2d 417, also discussed this issue. In *Elgin,* a switch engine collided with a truck. The evidence established that the truck driver's view of the train was obstructed. The switch engine was operated by an engineer and had a switchman riding on its front. The switchman saw the truck approaching, signaled twice for it to stop, waited five seconds after the second signal, and signaled the engineer to stop the engine as he leaped from it. The engine braked, but not in time to avoid the collision. We found that the evidence was sufficient to establish that the switchman should have known that the truck driver had not seen the signals and was not aware of his danger.[13] This sufficed for *Croly's* special duty.

---

*Wabash Railway Co. v. Tippecanoe Loan & Trust Co.* (1912), 178 Ind. 113, 121, 98 N.E. 64.

"*Croly's* exception, the "special duty," allows assertion of last clear chance by the plaintiff when the defendant was aware of plaintiff's peril, but the plaintiff was not. This is not, as Gasich claims, a "special last clear chance doctrine applicable to railroads." It is, rather, one of the general situations in which last clear chance has been held to apply. Prosser, *supra,* Section 66 nn. 32–40 and accompanying text. *See also* 57 Am.Jur.2d Negligence Section 400. It has been applied to railroad cases. 65 *Am. Jur.2d Railroads* Section 537. There is a controversy, nationally, as to whether the "knowledge" required is actual or imputed. 57 *Am. Jur.2d Negligence* Section 400. In Indiana, actual knowledge is required. *Button v. Pennsylvania Railroad Company* (1944), 115 Ind.App. 210, 219, 57 N.E.2d 444. This special duty rule can also be characterized as a causation requirement. Arguably, the defendant's knowledge of danger is analogous to negligence succeeding the plaintiff's. Like succeeding negligence, knowledge of peril puts the defendant in an advantageous position vis-a-vis the plaintiff to avoid the consequences of that peril. Failure to act on such knowledge may fairly be characterized as proximately causing the injury. The defendant's conscious choice to do nothing becomes a superseding cause. *See generally* Prosser, *supra,* Section 66, p. 430. (Alternatively, the exception may simply be a device for penalizing the defendant for a comparatively greater "fault." *See* Prosser, *supra,* Section 66 n. 9 and accompanying text.)

13. "[T]he evidence demonstrates that the railroad's switchman twice signaled to Hood; that Hood's view of the approaching engine was obstructed; and that he did nothing to indicate that he had observed either of such signals. The record further establishes that the switchman did nothing for four to five seconds after giving Hood the second signal and failed to signal the engineer to stop until he jumped from the engine just prior to the collision; that the normal stopping distance of the train at its speed that morning was twenty feet; and that although the train's brakes were applied only two to three seconds prior to the collision, it traveled only about three feet past the point of initial im-

We find no evidence in the present case which could give rise to a similar inference of actual knowledge. Langer did see Gasich approaching the crossing. Langer also saw the Johnson vehicle approaching the crossing. The Johnson vehicle stopped before the crossing. This could have led Langer to the legitimate assumption that his train was visible to Gasich and that the latter would also stop before the crossing. There was nothing in Gasich's conduct to negate such an assumption. Unlike the occupants of the buggy in *Stevenson,* Gasich was not approaching the train on a parallel course with his back to the train. He was on a perpendicular course, with the train in clear view to his left. Nothing in Gasich's course should have alerted Langer that Gasich was not aware of the train's approach. Nor was it apparently as it was in *Elgin,* that Gasich was ignoring warning signals given for his benefit. Rather, here the Johnson vehicle stopped after the signals were given. This, again, could legitimately have led Langer to assume that Gasich had heard the signals and would heed them.

The absence of conduct which could have alerted Langer to Gasich's heedlessness makes the facts in the present case analogous to the facts in *Chesapeake & Ohio Railway Co. v. Williams* (1943), 114 Ind. App. 160, 51 N.E.2d 384. In *Williams* a collision occurred between an automobile and a train. Although the automobile took a rather complex route toward the crossing when the collision occurred, the driver had an unobstructed view of the approaching train for 145 feet and was traveling at a slow rate of speed toward the crossing.[14] The court distinguished *Croly* and *Stevenson,* and found that no special duty arose given the absence of evidence which could have put the train crew on notice of the driver's ignorance of their existence. The court quoted with approval a Texas case which found, on similar facts, that:

"It seems to us that the slow approach of the automobile to the railway track at the point where the approaching train was in full view and close at hand would have reasonably induced and did induce the operatives of the locomotive to conclude that the driver of such automobile would stop it before it reached such railway track."

114 Ind.App. at 174, 51 N.E.2d 384, quoting *Texas & N.O. Railway Co. v. Wagner* (Tex. Civ.App.1924), 262 S.W. 902.

Because there was no evidence indicating that the train crew was, or should have been, aware that Gasich was in a situation of danger, no special duty existed.[15] Absent such a special duty, the train crew was only under a general duty of due care. 189 Ind. at 106, n. 11, 123 N.E. 785, *supra.* Contributory negligence is a defense to this general duty. Therefore, there was no error.

### III.

Gasich's final argument is that it was error to exclude her exhibit number 28, which was a photograph of a sign post

pact. The jury could have concluded from this evidence that the switchman should have known that Hood would fail to stop after signaling him the second time, and that had the switchman signaled the engineer any earlier, the collision would have been avoided. It must be concluded that there was evidence before the trial court rendering the theory of last clear chance applicable to this case, and that such evidence was sufficient to allow the jury to find that appellant had both the last clear chance to avoid the collision and negligently failed to do so."
336 N.E.2d at 420.

14. There was also evidence that a passenger had seen the train approaching. 114 Ind.App. at 173–74, 51 N.E.2d 384.

15. An additional requirement for special duty was also lacking. Not only must there be an awareness of danger, and the other's obliviousness to that danger, but the awareness must occur while there is still time to avoid injury. 54 Ind.App. at 586–87, 589, 96 N.E. 973. Langer first saw Gasich when the lead engine was about 600 feet from the crossing. There was evidence that it would have taken, from the initial application of the brakes, 1620 feet to have stopped the train. Had Langer realized Gasich's peril at the first instant he saw him, he could not have stopped the train in time to avoid a collision. *Cf. Elgin, Joliet & Eastern Ry. Co. v. Hood* (1975), 166 Ind.App. 336, 336 N.E.2d 417.

from which a railroad warning sign was missing. We disagree. It is the responsibility of one asserting error in excluding evidence to demonstrate prejudice resulting from that exclusion. *City of Indianapolis v. Ervin* (1980), Ind.App., 405 N.E.2d 55, 62. Gasich fails to show that the exclusion of this photograph prejudiced her case. Other photographs of the crossing were introduced into evidence. They indicated that there was no circular railroad crossing warning sign at the crossing. Richard Johnson testified that he saw no such sign. The railroad did not dispute the absence of such a sign.[16] The exclusion of the photo-

graph did not prejudice Gasich because the absence of such a sign was otherwise established. 405 N.E.2d at 62.

The judgment is affirmed.

HOFFMAN, P.J., and STATON, J., concur.

---

16. The railroad was not obligated to place such a sign at the crossing. Its only obligation was to mark the crossing with the crossbuck signs, which were present. IC 8–6–6–1.